2018 PA Super 166

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DENNIS ANDREW KATONA | |
| Appellant | No. 1995 WDA 2014 |

Appeal from the Judgment of Sentence November 10, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002549-2011

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., OTT, J., STABILE, J. AND DUBOW, J.

OPINION BY BOWES, J.: **FILED JUNE 14, 2018**

Dennis Andrew Katona appeals from the judgment of sentence of forty to eighty months incarceration, imposed following his stipulated non-jury trial convictions for two counts of possession with intent to deliver and two counts of possession of a controlled substance. Appellant attacks the constitutionality of the search warrant, which led to the recovery of drugs, currency, and other items, as well as the sufficiency of the evidence. We affirm.

The facts germane to Appellant's issues largely concern the affidavit of probable cause for the anticipatory search warrant, which was executed at Appellant's residence on June 29, 2011. That application set forth the following. Beginning in 2009, the Pennsylvania State Police ("PSP") utilized a confidential informant ("CI") who was a member of the Pagan Motorcycle

Club, and who had previously provided reliable information. On April 28, 2011, the CI informed the lead investigator, Pennsylvania State Police Trooper Matthew Baumgard, that Appellant, whom the CI identified as a member of the Pagan Motorcycle Club, unexpectedly arrived at his home and offered to sell him three one-half ounce packages of cocaine for $650 per package. The CI declined, stating that he had just purchased cocaine from "Tony" and was dissatisfied with the quality. The CI contacted the authorities to report this development.

On May 16, 2011, the CI informed Trooper Baumgard that Appellant had invited him to Appellant's home. Upon arrival, Appellant showed the CI one-half pounds of cocaine. Appellant said he obtained the package due to the CI's dissatisfaction with Tony's product, and offered him the entire package in exchange for $5,000 paid over time. The CI agreed and took the cocaine, which he then turned over to the authorities.

Based on this information, the authorities applied for an order authorizing a consensual wiretap of conversations occurring inside Appellant's residence pursuant to 18 Pa.C.S. § 5704(2)(iv), with the CI agreeing to wear a recording device.[1] The order was granted later that day, and, significant to Appellant's challenges on appeal, authorized continuous

---

[1] The statutory text is set forth in the writing, *infra*.

interception of all in-home conversations for a period of thirty days. The Commonwealth also obtained an extension of the order after the thirty days expired.

Thereafter, the CI made several visits to Appellant's home and recorded the ensuing conversations. On May 16, 20, 25, and 31, 2011, the CI went to Appellant's home and delivered cash provided by the authorities to Appellant in installments. Officers surveilled Appellant's home during each meeting, and met with the CI afterwards to discuss what occurred and retrieve the recordings.

Next, on June 9, 2011, Appellant gave the CI two more ounces of cocaine in exchange for his agreement to deliver payment over time. Additionally, Appellant offered to sell the CI methamphetamine for $1,300 per ounce. Later that evening, Appellant arrived at the CI's doorstep and delivered the methamphetamine.

On June 13, 2011, the CI paid cash to Appellant for the cocaine that was supplied on June 9, 2011. Additionally, on June 15, 2011, Appellant supplied more cocaine, which the CI then paid for on June 20, 2011.[2] Similarly, on June 22, 2011, Appellant gave the CI more cocaine at Appellant's residence.

_____

[2] The June 15, 2011 delivery of cocaine occurred in a Home Depot parking lot instead of Appellant's residence.

On June 27, 2011, the CI visited Appellant's home and paid for the cocaine received five days prior. During this meeting, Appellant indicated that he would once again have a quantity of cocaine and methamphetamine available for pickup on June 29, 2011. On the basis of the foregoing information, Trooper Baumgard requested an anticipatory search warrant for Appellant's home, which was to be executed upon Appellant's contact with the CI on the 29th.

On June 29, 2011, Appellant called the CI and informed him that he was at home. Trooper Baumgard authorized the execution of the search warrant, which yielded the following items from the master bedroom: a United American bank bag containing drugs, a briefcase containing drugs in a separate bank bag, a digital scale, and a black accordion file next to the bed containing documents and mail establishing that Appellant and his wife lived at the home. A total of 84.2 grams of cocaine was seized in addition to 99.64 grams of methamphetamine. The parties stipulated to the recovery of these items following the search warrant, as well as to expert testimony that, based on all the circumstances, the drugs were possessed with the intent to deliver. Appellant was found guilty of all charges and received the aforementioned sentence. Appellant presents the following issues for our review.

> I. Whether the June 29, 2011 search warrant for Appellant's home was rendered invalid because it relied almost exclusively on an order or search warrant as described in ***Commonwealth***

- 4 -

*v. Brion*, 539 Pa. 256, 652 A.2d 287 (1994) and as codified in 18 Pa.C.S. § 5704(2)(iv) which order or warrant allowed for, *inter alia*, unlimited intercepts over a period of thirty days, as opposed to allowing only a single intercept?

II. Whether the June 29, 2011 search warrant was invalid because it failed to meet the specific requirements of an anticipatory warrant?

III. Whether the Commonwealth presented sufficient evidence of possession to sustain the conviction against appellant?

Appellant's brief at 3.

We address Appellant's third issue first, since a successful sufficiency of the evidence charge requires discharge. **Commonwealth v. Toritto**, 67 A.3d 29 (Pa.Super. 2013). Our standard of review is well-settled. Whether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926 (Pa.Super. 2016). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

**Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015).

Herein, Appellant's sufficiency challenge is limited to whether the Commonwealth presented sufficient facts to sustain a finding that he possessed the drugs beyond a reasonable doubt. Appellant argues that the

evidence only establishes that he was present in the same residence where the drugs were found. It is true that mere presence cannot sustain a finding of possession. However, the Commonwealth is not required to show actual physical possession of the drugs. Constructive possession is sufficient, which

> is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Muniz*, 5 A.3d 345, 348–49 (Pa.Super. 2010) (citation omitted); *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa.Super. 2013) ("In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control."). The intent to exercise control over a piece of contraband can be proven by circumstantial evidence and all the circumstances in question. *Muniz*, *supra*.

Appellant argues that the Commonwealth could not establish possession because he was merely present and "there is **no** evidence regarding how long [Appellant] had been at the residence prior to law enforcement's arrival." Appellant's brief at 54 (emphasis in original). We do not find that this fact precludes a finding of possession. It would be rather

remarkable to conclude that an unknown party secreted, without Appellant's knowledge, approximately 200 grams worth of drugs in his master bedroom. Additionally, Appellant highlights that his wife was present, suggesting that she may have possessed the drugs without Appellant's knowledge. However, our law holds that two persons may constructively possess the same item. *See Commonwealth v. Macolino*, 469 A.2d 132 (Pa. 1983) (constructive possession in one defendant where both husband and wife had equal access to an area where the contraband was found); *Commonwealth v. Valette*, 613 A.2d 548, 550 (Pa. 1992) ("Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access."). We find that, when viewed in the light most favorable to the Commonwealth, the totality of the circumstances established that Appellant constructively possessed the drugs.

We now address Appellant's averment that the search warrant was defective. "The ultimate issue in a suppression hearing is whether the police officer affiants had probable cause at the time they applied for a search warrant." *Commonwealth v. Luton*, 672 A.2d 819 (Pa.Super. 1996).

> [T]he Commonwealth has the burden of proving that the facts presented to the magistrate demonstrate probable cause. The standard for evaluating whether probable cause exists for the issuance of a search warrant is the "totality of the circumstances" test as set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which was adopted by the Pennsylvania Supreme Court in *Commonwealth v. Gray*, 509 Pa. 476, 484, 503 A.2d 921, 925 (1985). A magistrate is to make a "practical, common-sense decision

whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." The information offered to establish probable cause must be viewed in a common sense, non-technical manner and deference must be given to the issuing magistrate. It must be remembered that probable cause is based on a finding of the probability of criminal activity, not a *prima facie* showing of criminal activity.

*Id*. at 821-22 (some citations omitted).

Appellant's primary issue concerns whether the warrant application could lawfully include the information learned from the in-home conversations which were recorded by the CI. Appellant challenges the statutory authorization for the consensual recordings, which Appellant maintains were necessary to sustain the warrant. "When the . . . paragraphs which specifically rely upon the illegal in-home intercepts are redacted from the affidavit, no **present** probable cause exists[.]" Appellant's brief at 33 (emphasis in original).

We agree that if the information gleaned from Appellant's conversations with the CI was obtained in violation of Appellant's constitutional rights, those portions must be excised from the warrant. *See* ***Commonwealth. v. Gindlesperger***, 706 A.2d 1216, 1224 (Pa.Super. 1997), *affirmed*, 743 A.2d 898 (Pa. 1999) (use of thermal imaging device was unconstitutional search and therefore that information must be omitted when examining whether search warrant was valid). Appellant's challenge

to the recordings relies on both statutory and constitutional grounds. We first turn our attention to the Wiretapping and Electronic Surveillance Control Act (hereinafter "the Act"), 18 Pa.C.S. §§ 5701-5782.

## I

## The Wiretap Act

The Act prohibits the intentional interception of any oral communication unless all parties consent to the recording. 18 Pa.C.S. § 5703. The Act sets forth a number of exceptions, including an exception for consensual interceptions authorized by one party to the conversation, subject to the following requirements:

> It shall not be unlawful and no prior court approval shall be required under this chapter for:
>
> . . . .
>
> (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:
>
> (i) Deleted.
>
> (ii) **one of the parties to the communication has given prior consent to such interception**. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed

the facts and is satisfied that the consent is voluntary and has given prior approval for the interception[.]

. . . .

(iv) the requirements of this subparagraph are met. If an oral interception otherwise authorized under this paragraph will take place in the home of a nonconsenting party, then, in addition to the requirements of subparagraph (ii), the interception shall not be conducted until an order is first obtained from the president judge, or his designee who shall also be a judge, of a court of common pleas, authorizing such in-home interception, based upon an affidavit by an investigative or law enforcement officer that establishes probable cause for the issuance of such an order[.]

18 Pa.C.S. § 5704 (emphasis added).[3]  Therefore, § 5704(2)(ii) permits the recording of a conversation when only one party consents, if approved by an authorized prosecutor.  However, when that recording is to take place inside a home, additional requirements are imposed as established by § 5704(2)(iv); namely, that the president judge of a court of common pleas must authorize the intercept after probable cause has been established.  We have previously stated that this statutory amendment codified the holding of **Commonwealth v. Brion**, 652 A.2d 287 (Pa. 1994), discussed in detail *infra*.  **See Commonwealth v. Fetter**, 770 A.2d 762, 766 (Pa.Super. 2001) ("In response to **Brion** the Legislature amended the Wiretap Act to include § 5704(2)(iv)[.]").

_____

[3] For ease of reference, we refer to the consensual recordings at issue as a wiretap.

In contrast, a nonconsensual intercept, *i.e.* one where all parties to the conversation are ignorant of monitoring by law enforcement, is not an exception to the Act and requires approval by the Superior Court of Pennsylvania. Authorized prosecutors can make application with this Court "for an order authorizing the interception of a wire, electronic or oral communication . . . when such interception may provide evidence of the commission" of certain enumerated offenses. 18 Pa.C.S. § 5708. Additionally, orders permitting nonconsensual wiretaps pursuant to § 5708 require the Commonwealth to establish, *inter alia*, that "other normal investigative procedures with respect to the offense have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ." 18 Pa.C.S. § 5709. Orders granted by this Court are subject to the timing provisions set forth at 18 Pa.C.S. § 5712:

> **(b) Time limits.--**No order entered under this section shall authorize the interception of any wire, electronic or oral communication for a period of time in excess of that necessary under the circumstances. . . . **No order entered under this section shall authorize the interception of wire, electronic or oral communications for any period exceeding 30 days**. The 30-day period begins on the day on which the investigative or law enforcement officers or agency first begins to conduct an interception under the order, or ten days after the order is entered, whichever is earlier.

18 Pa.C.S. § 5712 (emphasis added).[4]

_____

[4] The Act refers to orders obtained under "this section." In context, the statute is referring to nonconsensual wiretap orders granted by the Superior

*(Footnote Continued Next Page)*

- 11 -

## II

## The Parties' Arguments

Appellant acknowledges that as a matter of statutory analysis, § 5704(2)(iv) imposes no time limit on consensual wiretaps. However, he notes that the statute refers to an interception in the singular, and, consistent with pronouncements from our Supreme Court, as well as from the United States Supreme Court, he maintains that the Act therefore authorizes only one intercept as a matter of both constitutional and statutory law. "[T]he statute governing in-home consensual intercepts, like the Supreme Court decision in **Brion**, intended the warrant/order **to be for a single intercept**." Appellant's brief at 26 (emphasis added). As such, the order authorizing the consensual wiretap permitted one recording, *i.e.*, the first recording.[5] Appellant analogizes all recordings after the first to multiple executions of one search warrant. Consequently, Appellant views each subsequent recording as an unconstitutional search without prior judicial approval.

*(Footnote Continued)* ———————————

Court. With respect to consensual wiretaps, like those at issue herein, those recordings are deemed to "not be unlawful" and are considered exceptions to the Act.

[5] The trial court determined that the order was valid because it complied with the statutory mandate, and addressed Appellant's constitutional challenge in cursory fashion.

In supporting their respective positions, the parties' briefs extensively discuss **Brion** and the statutory differences between consensual and nonconsensual wiretaps. For example, the Commonwealth argues that if the Act permits a nonconsensual wiretap for thirty days, then it necessarily follows that a consensual recording is likewise constitutionally permissible for at least the same length. Moreover, the Commonwealth states that Appellant's interpretation places an onerous burden on law enforcement, as the Commonwealth would have to seek new orders if the target happened to exit and re-enter his residence while the consenting party was on site. Appellant responds that the Commonwealth's argument misses the mark, since a nonconsensual wiretap order imposes more stringent requirements, including the need for the Commonwealth to demonstrate that normal investigative techniques have failed or are too dangerous to employ. In Appellant's view, the Commonwealth effectively obtained a § 5708 wiretap order while sidestepping the requirements applicable to such orders.

Finally, the Commonwealth advances the position that the search warrant does not rely on the actual recordings, and states that "even if no recording device had been used in this case at all, the observations of the Troopers and the information relayed to them by the CI . . . would still have

established probable cause[.]" Commonwealth's brief at 12.[6] In response, Appellant counters that "there is no way to ascertain to what extent the affiant may have relied on what he heard on the illegally obtained and recorded intercepts[.]" Appellant's reply brief at 5.

We agree with the Commonwealth with respect to its latter position, and affirm on that basis. **See Commonwealth v. O'Drain**, 829 A.2d 316, 322, n.7 (Pa.Super. 2003) (we may affirm if there is any basis on the record to support the trial court's action, even if we rely on a different basis). In reaching this conclusion, we find that the parties have largely overlooked a critical distinction between the voluntary disclosure of information versus the recording of same. In truth, Appellant seeks to suppress **information**, not the recordings. For the reasons that follow, we find that this is not a mere technical distinction and is outcome determinative. We therefore decline to reach Appellant's constitutional argument that the Act permits only one in-home intercept.

### III

### Constitutional Protections

_____

[6] The Commonwealth's argument suggests that the affidavit of probable cause was sufficient even in the absence of the statements as captured on tape, whereas we find that we may consider Appellant's statements. "The portion of the affidavit that relied upon the contents of the in-home recordings was almost vanishingly small and probable cause continues to exist even if it is excised from the affidavit." Commonwealth's brief at 13.

- 14 -

We begin by discussing whether and when citizens have a constitutional interest in private conversations, as protected by the Fourth Amendment to the United States Constitutions or Article I, Section 8 of the Pennsylvania Constitution. Article I, Section 8 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8. The Fourth Amendment's text is similar, and provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.[7]

---

[7] Appellant's suppression motion exclusively raised constitutional grounds, and he did not invoke statutory remedies under the Act. *See* 18 Pa.C.S. § 5721.1(e) ("The remedies and sanctions described in this subchapter with respect to the interception of wire, electronic or oral communications are the only judicial remedies and sanctions for nonconstitutional violations of this subchapter involving such communications."). In his brief, he states that "[T]he statutory exclusionary rule as set forth in § 5721(a) and (b) applies, as does the constitutional exclusionary rule." Appellant's brief at 30. His substantive argument is limited to constitutional grounds and we therefore limit our examination to those arguments.

We separately analyze federal and state precedents with respect to this issue, as "Although the wording of the Pennsylvania Constitution is similar in language to the Fourth Amendment . . . we are not bound to interpret the two provisions as if they were mirror images, even where the text is similar or identical." **Commonwealth v. Edmunds**, 586 A.2d 887, 895–96 (Pa. 1991) (footnote omitted).

**A**

Fourth Amendment

The United States Supreme Court has held that there is no Fourth Amendment interest in information disclosed during conversations, even if one of the citizens is actually an agent of the government. In **Hoffa v. United States**, 385 U.S. 293 (1966), the Court was asked to overturn a conviction on the basis of a Fourth Amendment violation. Briefly stated, James Hoffa, the president of the International Brotherhood of Teamsters, was on trial for another matter over a lengthy period of time. During that trial, Edward Partin, a local Teamsters official, visited Hoffa's hotel room. Partin, who was under indictment for embezzlement, had agreed to act as an informer for the Government. Partin engaged in multiple conversations with Hoffa and his associates, which concerned schemes by Hoffa to bribe the jury. Partin thereafter disclosed the contents of those conversations to federal agents. These conversations occurred at various locations, including

Hoffa's hotel. Partin testified at a later trial, where Hoffa was convicted of attempting to influence a juror.

Hoffa alleged that his Fourth Amendment rights were violated because Partin failed to disclose his role as a government informer. Therefore, "by listening to [Hoffa]'s statements Partin conducted an illegal 'search' for verbal evidence." *Id*. at 300. The Court disagreed, finding that Hoffa had no Fourth Amendment interest in that which he voluntarily disclosed to Partin.

> [I]t is evident that no interest legitimately protected by the Fourth Amendment is involved. It is obvious that the petitioner was not relying on the security of his hotel suite when he made the incriminating statements to Partin or in Partin's presence. Partin did not enter the suite by force or by stealth. He was not a surreptitious eavesdropper. **Partin was in the suite by invitation, and every conversation which he heard was either directed to him or knowingly carried on in his presence**. The petitioner, in a word, was not relying on the security of the hotel room; he was relying upon his misplaced confidence that Partin would not reveal his wrongdoing. As counsel for the petitioner himself points out, some of the communications with Partin did not take place in the suite at all, but in the 'hall of the hotel,' in the 'Andrew Jackson Hotel lobby,' and 'at the courthouse.'
>
> Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.

*Id*. at 302 (emphasis added, footnote omitted). Thus, even within the confines of the home, an individual has no privacy interest in whatever he chooses to disclose voluntarily to his guests.[8]

*Hoffa* and other cases discussed within its body precede the seminal case of *Katz v. United States*, 389 U.S. 347 (1967), wherein the High Court held that the Fourth Amendment was violated when the police installed a listening device to the outside of a phone booth, which captured Katz's side of the phone conversations. The Court rejected the notion that a Fourth Amendment search can only occur if there is a physical intrusion into a constitutionally protected area, and held that the Government "violated the privacy upon which he justifiably relied . . . and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id*. at 353.[9] Thus, *Katz* addressed whether the individual had a reasonable expectation of privacy inside the phone booth, which necessarily included privacy in the contents of his conversations. *Compare Smith v. Maryland*,

---

[8] Hoffa's argument was, in part, that his consent for Partin's presence in his quarters was given with the expectation Partin was not working on behalf of the government. The Court did not find that the statement was "involuntary" as a result of that deception.

[9] Justice Harlan's concurring opinion, which was later adopted by a majority of the Court, determined that an individual must demonstrate a reasonable expectation of privacy, which requires an assessment of whether (1) the individual exhibited a subjective expectation of privacy, and (2) whether that expectation is one society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

442 U.S. 735, 741 (1979) (pen register device that captured dialed phone numbers was not a Fourth Amendment search as there was no reasonable expectation of privacy; "[A] pen register differs significantly from the listening device employed in *Katz*, for pen registers do not acquire the **contents** of communications.") (emphasis in original).

Furthermore, the High Court has not definitively addressed whether broadcasting an in-home conversation, as opposed to merely relating the contents of the conversation as in *Hoffa*, violates the Fourth Amendment. In *United States v. White*, 401 U.S. 745 (1971), a plurality of the Court noted that "*Hoffa* . . . which was undisturbed by *Katz*, held that however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is regularly communicating with the authorities." *Id*. at 749. *White* analyzed whether the outcome changes when an informer not only records the conversations "but instantaneously transmits them electronically to other agents equipped with radio receivers." *Id*. at 750. The plurality reexamined the prior precedents in light of *Katz* and concluded that there was no constitutional difference between disclosing the contents of the conversation and recording/transmitting the same. Hence, the defendant did not have a reasonable expectation of privacy in what was said to a willing informer. The Court reasoned that since *Hoffa* permits an agent

to write down what he hears, it follows that he may both record and transmit

the conversations.

> If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.
>
> Our problem is not what the privacy expectations of particular defendants in particular situations may be or the extent to which they may in fact have relied on the discretion of their companions. Very probably, individual defendants neither know nor suspect that their colleagues have gone or will go to the police or are carrying recorders or transmitters. Otherwise, conversation would cease and our problem with these encounters would be nonexistent or far different from those now before us. Our problem, in terms of the principles announced in **Katz**, is what expectations of privacy are constitutionally 'justifiable'—what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by **Hoffa** and **Lewis**. **If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case**.

**Id**. at 751–52 (emphasis added, citation omitted).

Appellant, on the other hand, apparently sees no constitutional

distinction between **Hoffa** and **Katz**. He cites the following quotation from

**Berger v. New York**, 388 U.S. 41 (1967), as applying to the issue at hand:

- 20 -

"Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Id*. at 63. This quotation has no applicability to this case. Whether the CI recorded the conversations or not, Appellant still disclosed information to an informer, who was free to tell the authorities what he had learned. "It would be a dubious service to the genuine liberties protected by the Fourth Amendment to make them bedfellows with spurious liberties improvised by farfetched analogies which would liken eavesdropping on a conversation, with the connivance of one of the parties, to an unreasonable search or seizure." *White*, *supra* at 750 (quoting *On Lee v. United States*, 343 U.S. 747 (1952)).

In summary, as a matter of Fourth Amendment law, there is no constitutional issue when a person, such as the CI herein, enters the home of a citizen and records the conversations. In those situations, the speaker has voluntarily disclosed information, and the speaker cannot claim a reasonable expectation of privacy in either the information **or** a simultaneous recording of that information.[10] Therefore, no search occurs when the conversations are captured on a recording device.

---

[10] Some federal decisions have held that the further intrusion of capturing video evidence of what occurred inside the home, as opposed to merely recording conversations, is permissible. *See e.g. United States v. Wahchumwah*, 710 F.3d 862, 867 (9th Cir. 2013) (*en banc*) ("We are persuaded that it is not 'constitutionally relevant' whether an informant utilizes an audio-video device, rather than merely an audio recording device, *(Footnote Continued Next Page)*

**B**

Article I, Section 8

The fact that the Fourth Amendment does not apply as a matter of federal law does not end the matter. The States are free to impose greater protections, and, as previously mentioned, our Supreme Court has directly confronted the issue of in-home recordings under the Pennsylvania Constitution in **Brion**, **supra**, which we now examine.

In **Brion**, the police, with prosecutorial approval, sent a consenting confidential informant to purchase marijuana from Michael Brion at his residence and record the conversation. The Commonwealth had relied upon 18 Pa.C.S. § 5704(2)(ii), which, as previously quoted, permitted interceptions upon prosecutorial approval and where one party to the conversation consents. Brion "filed a timely motion to suppress **the tape recording** of the transaction between himself and the informant." **Id**. at 287 (emphasis added). Our Supreme Court agreed, finding that compliance with § 5704(2)(ii) under the circumstances resulted in an unconstitutional search. First, the Court held that an individual has a reasonable expectation of privacy with respect to the conversations under Article I, Section 8, thereby departing from the foregoing federal precedents.

*(Footnote Continued)* ————————

to record activities occurring inside a home, into which the informer has been invited.").

[T]he instant case involves conversations taking place in the sanctity of one's home. If nowhere else, an individual must feel secure in his ability to hold a private conversation within the four walls of his home. For the right to privacy to mean anything, it must guarantee privacy to an individual in his own home. . . .

. . . .

[W]e hold that an individual can reasonably expect that his right to privacy will not be violated in his home through the use of any electronic surveillance.

*Id*. at 289 (footnote omitted). With respect to the fact that the Act authorized the intercept, ***Brion*** declined to find the section wholly unconstitutional but applied the construction that "interception pursuant to 18 Pa.C.S. § 5704(2)(ii) can only be deemed constitutional under Article 1, Section 8 if there has been a prior determination of probable cause by a neutral, judicial authority." ***Id***. at 289. As quoted in the foregoing discussion, the Act was thereafter amended in response to ***Brion***. ***Fetter***, ***supra***.

Thus, ***Brion*** stands for the proposition that a citizen has a reasonable expectation of privacy that his conversations will not be recorded by his guests, and therefore the actual recordings are subject to suppression. "Because there was no determination of probable cause by a neutral judicial authority, the consensual body wire violated Article I, Section 8 and the tape recording of the transaction in Brion's home should have been suppressed." ***Id***. at 289.

It does not, however, invariably follow that the information itself is likewise subject to suppression. This concept was discussed in *Commonwealth v. Rekasie*, 778 A.2d 624 (Pa. 2001). *Rekasie* was not cited by the parties, but we believe that the case highlights the crucial distinction between using an actual recording as substantive evidence versus relying on the information itself for purposes of a search warrant. In *Rekasie*, a confidential informant, Thomas Tubridy, informed the police that Vincent Rizzo, a Florida resident, supplied cocaine to Kirk Rekasie. A prosecutor, without prior court approval, approved the recording of phone conversations between Tubridy and Rekasie. The Court discussed whether Rekasie had a reasonable expectation of privacy in his telephone conversations with Tubridy, as the Commonwealth relied on the concept of disclosure to rebut that expectation. *Rekasie* acknowledged that "[this] analytic framework, which this court has applied in considering privacy expectations . . . has been less than clear." *Id*. at 628. *Rekasie* engaged in a thorough analysis of disclosure, which rejected the analysis of *White*, *supra*:

> This concept, that one does not have an expectation of privacy in information voluntarily disclosed to another, has been consistently applied by the federal high court in denying assertions of expectations of privacy under the Fourth Amendment; yet, our court has not followed federal jurisprudence lock-step. While on occasion, this court has utilized the disclosure concept to vitiate an assertion of a privacy expectation, most notably in [*Commonwealth v.*]*Blystone*[, 549 A.2d 81 (1988)], more recent case law makes clear that our

court has not strictly adhered to the federal tenet that an individual maintains no expectation of privacy in information disclosed to others. Thus, under Pennsylvania Constitutional jurisprudence, it is manifest that a citizen's expectation of privacy can extend, in some circumstances, to information voluntarily disclosed to others.

. . . .

In the context of a verbal communication, in *Brion*, our court held that Article I, Section 8 prevents police from sending a confidential informant into the home of an individual to electronically record his conversation by use of a body wire absent a prior determination of probable cause by a neutral judicial authority. In finding a constitutionally-recognized expectation of privacy, our court's primary focus was on the zone of privacy in the home and the face-to-face conversations taking place therein. The majority did not embrace an analysis based on the disclosure of information, which, as described above, and by the dissenters in *Brion*, would have resulted in no recognized expectation of privacy. Thus, contrary to the analysis utilized in *White*, our court, while still applying the *Katz* privacy expectation construct, found a legitimate expectation of privacy in face-to-face conversations conducted within one's home.

. . . .

In summary, unlike the United States Supreme Court, our court has declined to embrace a constitutional analysis under Article I, Section 8 that relies primarily upon a principle of disclosure. For over twenty years, our court has transcended such a limited analysis and has focused, even when information is voluntarily disclosed to another, on the test in *Katz, i.e.*, both the person's actual expectation of privacy and the societal recognition of such an expectation of privacy as being reasonable-a construct which in this Commonwealth takes into account the circumstances of the situation surrounding the disclosure of information as well as the individual's conduct. We now turn to application of this standard.

Applying the *Katz* privacy expectation construct that has evolved under this court's jurisprudence to the case *sub judice,* we find that while Rekasie might have possessed an

actual or subjective expectation of privacy in the telephone conversation with Tubridy, because of the nature of telephonic communication, it is not an expectation that society would recognize as objectively reasonable.

*Id*. at 629–31 (footnotes omitted). The Court in **Rekasie** opined that **Brion** did not warrant a contrary result, because phone calls are "[q]ualitatively different than a face-to-face interchange occurring solely within the home in which an individual reasonably expects privacy and can limit the uninvited ear[.]" **Id**. at 632. Therefore, **Rekasie** distinguished **Brion** and permitted the introduction of the actual recorded conversations, based on the fact that there was no reasonable expectation of privacy in the phone conversation.

While some language in **Rekasie** appears to broadly embrace the notion that an individual retains an expectation of the privacy in the information itself, as expressed in the quotation "it is manifest that a citizen's expectation of privacy can extend, in some circumstances, to information voluntarily disclosed to others," **id**. at 630, that observation was *dicta* due to the fact that the Court held that Rekasie had no reasonable expectation of privacy that his phone conversations would not be recorded. Then-Chief Justice Castille, joined by now-Chief Justice Saylor, authored a concurring opinion distancing himself from that *dicta*:

My point of qualification concerns *dicta* in the majority opinion concerning whether and when a person may retain a reasonable expectation of privacy in the information itself that he discloses to others. Majority Op. at 629-31. With respect to this discussion, it is essential to recognize what is and is not at issue in this case. This Court does not face a claim that

- 26 -

the **substance** of appellant's telephone conversation with Tubridy was subject to suppression; *i.e.,* there is no claim that Tubridy should be constitutionally precluded from repeating in court the specific words that he recalled appellant saying to him telephonically. Instead, here, as in ***Commonwealth v. Brion****,* 539 Pa. 256, 652 A.2d 287 (1994), ***Commonwealth v. Blystone****,* 519 Pa. 450, 549 A.2d 81 (1988), *aff'd on other grounds,* ***Blystone v. Pennsylvania****,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and ***Commonwealth v. Alexander****,* 551 Pa. 1, 708 A.2d 1251 (1998), the claim is that a **tape recording** of that conversation, made with Tubridy's express consent, should be excluded from evidence.

The distinction is significant. In my view, the teaching in ***Commonwealth v. Blystone****,* respecting the nature of oral communications, remains controlling as to the expectation of privacy one may have in what one says to another. Citing with approval to authority from the United States Supreme Court in that Article I, § 8 case, ***Blystone*** noted that, "a thing remains secret until it is told to other ears, after which one cannot command its keeping. What was private is now on other lips and can no longer belong to the teller. What one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret." 549 A.2d at 87. Implicit in this observation about the very nature of privacy expectations in oral communications was the recognition that one's listeners can, and often do, repeat the content of a conversation to anyone they choose. That reality, in turn, suggests that, at least in the absence of some recognized privilege, the speaker cannot be said to possess any reasonable expectation that the contents of the conversation itself will remain private once the words are related to another.

***Id***. at 633–34 (Castille, C.J., concurring) (emphases in original).

The instant case squarely presents the issue of whether a defendant is entitled to preclude consideration of the substance of conversation, assuming *arguendo* that the simultaneous recording of that conversation occurred in violation of Appellant's constitutional rights as set forth in ***Brion***.

## IV

## Validity of the Affidavit

More specifically, the question is whether the affidavit of probable cause could lawfully include the **information** learned from Appellant's conversations with the CI, even if the conversations were unlawfully recorded. We hold that the information itself was not subject to suppression, and that remains true even if all recordings after the first violated Appellant's rights under Article I, Section 8.

Applying the foregoing precedents and principles, we find that the Commonwealth received the information twice: once when the CI told the officers that which Appellant voluntarily disclosed, and a second time when the CI performed a search by capturing Appellant's actual words on tape. *Brion* and the Pennsylvania Constitution dictate that Appellant had a reasonable expectation of privacy that his words would not be recorded, but we find that Appellant had no reasonable expectation of privacy with respect to the information itself, which he freely disclosed to the CI, who in turn relayed the information to the authorities.

*Brion*, and the Act's implementation of that case, addresses only whether there is a reasonable expectation of privacy that Appellant's conversations would not be recorded by his guests. This is evident from the fact that the issue in *Brion* was an attempt to suppress the recording itself as substantive evidence. We decline to extend an expectation of privacy to

the information itself. Appellant took the risk that the CI was acting on behalf of the Commonwealth, and as a result had no reasonable expectation of privacy in what he said and showed the CI. *Hoffa*, *supra*. To take Appellant's argument to its logical conclusion, *i.e.* that Appellant had a reasonable expectation of privacy in the actual substance of his conversations, then the Commonwealth needed prior judicial approval before asking the CI to enter Appellant's residence in the first instance.[11] That result would remarkably expand the reach of *Brion*, and would constitutionally prohibit the use of, *inter alia*, confidential informants and undercover agents, without prior judicial approval.

Thus, when we remove the recordings themselves from the equation, the Commonwealth lawfully obtained everything Appellant relayed to the CI.[12] "[E]vidence . . . is potentially suppressible as fruit of the poisonous

_____

[11] The Dissent states that this conclusion is incorrect, because "it is the face-to-face communication in one's home that is constitutionally and legislatively protected from surreptitious electronic seizure." Dissenting Opinion, at 2 n.1. If the communications, *i.e.*, the actual words said, are protected in their entirety, then it is unclear why a CI sent inside the home by direction of the Commonwealth can repeat the words said to him absent prior judicial approval of the entry into the home. We draw a distinction between a search of those words as contained within the recordings versus a "search" occasioned by the confidential informant hearing the words. We find that Appellant had no reasonable expectation of privacy in the actual substance of his conversations.

[12] To the extent that it matters whether the CI actually related the information, as opposed to simply supplying the recordings for police review
*(Footnote Continued Next Page)*

tree stemming from unconstitutional police conduct. However, . . . any such evidence may be admitted where the Commonwealth sufficiently proves that it was . . . discoverable through an independent source." ***Commonwealth v. Santiago***, 160 A.3d 814, 827 (Pa.Super. 2017). The independent source in this case was Appellant's voluntary disclosures to the CI. Therefore, the search warrant did not rely upon evidence derived from an unlawful wiretap, but rather the information disclosed to the authorities, which happened to also be recorded. Therefore, it is incorrect to posit that the Commonwealth derived its evidence from an unlawful wiretap, since the Commonwealth knew the same information with or without the recordings.

**V**

**The Continuing Vitality of *Brion***

We are, of course, mindful of the fact that this Court has no authority to overrule Pennsylvania Supreme Court precedent. In reaching our conclusion, we do not hold that the multiple intercepts were consistent with ***Brion*** and its interpretation of Article I, Section 8, an issue that both parties ask us to reach. The parties presented reasoned arguments respecting that issue. As Appellant notes, the Act was amended to codify ***Brion***, and the statutory language facially permits the Commonwealth to secure an open-

*(Footnote Continued)* ─────────────

without debriefing, the affidavit of probable cause makes plain that the CI frequently met with the investigating officers and discussed the contents of his conversations, with certain details corroborated by the recordings.

ended order authorizing in-home intercepts for an indefinite period of time. On the other hand, Appellant's proposed "one recording only" rule would require the Commonwealth to secure a separate order if the target and the consensual recorder happened to leave the home for a trip to the store and returned to a residence. The lack of statutory direction on this point is a matter for the Legislature.

We emphasize that in our holding today, we offer no opinion on whether the recordings themselves violated Appellant's constitutional rights under Article I, Section 8. In the event that Appellant's rights actually were violated, suppression of the recordings themselves is no mere constitutional consolation prize. Obviously, playing a recorded statement of Appellant's own words, in his own voice, is far more probative and damaging than offering a CI's testimony as to the substance of the conversations. Therefore, **Brion** places a check on the Commonwealth's ability to wield a defendant's own words against him, a check that remains in place following our decision today. We are concerned here only with whether Appellant was entitled to suppress what the Commonwealth learned.

Accordingly, for all the foregoing reasons, we decline to excise the challenged material from the warrant, and the trial court did not err in denying his motion.

## VI

### Whether the Anticipatory Warrant was Valid

We now address the remaining claim, which is that the anticipatory search warrant failed to comply with the Fourth Amendment even with consideration of all the information. The standard of review for search warrants, set forth *supra*, applies to these challenges. With respect to the issue of anticipatory search warrants, the following additional principles inform our analysis.

> When considering whether an anticipatory search warrant was supported by probable cause under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, judicial review is confined to the averments contained within the four corners of the affidavit of probable cause. Further, "[w]hether a particular anticipatory warrant should or should not be approved . . . will depend upon the sufficiency of the averments in the individual case."

*Commonwealth v. Wallace*, 42 A.3d 1040, 1048 (Pa. 2012) (footnotes and citations omitted). In *United States v. Grubbs*, 547 U.S. 90 (2006), the High Court established that anticipatory search warrants are not *per se* unconstitutional. The Court explained:

> An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place. Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called "triggering condition." The affidavit at issue here, for instance, explained that execution of the search warrant will not occur unless and until the parcel containing child pornography has been received by a person(s) and has been physically taken into the residence. If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition,

the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued.

*Id*. at 94 (cleaned up).[13]  As stated in *Wallace*, *supra*, the *Grubbs* decision

established two requirements which an affidavit of probable cause in support of an anticipatory search warrant must meet under the Fourth Amendment: (1) there is probable cause to believe the triggering condition will occur; and (2) if the triggering condition occurs there is a fair probability that contraband or evidence of a crime will be found in a particular place.  The high Court also held that the supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.

*Id*. at 1049 (cleaned up).

Appellant maintains that the instant application failed to establish the first prong because there was no basis for a finding of probable cause that "drugs might be on their way."  Appellant's brief at 45.  He argues that the Commonwealth was required to establish the probability of a drug delivery to Appellant's residence.  "The affiant therefore sought to establish that appellant Katona **would** obtain drugs[.]"  *Id*. (emphasis in original).

_____

[13] "Cleaned up" is a new parenthetical designed to "tell readers that they have removed extraneous material for readability and guarantee that nothing removed was important."  **See** Metzler, Jack, Cleaning Up Quotations (March 17, 2017). Journal of Appellate Practice and Process, 2018, Forthcoming.  Available at http://dx.doi.org/10.2139/ssrn.2935374. The superfluous material encompassed by the parenthetical includes brackets, ellipses, quotation marks, internal citations, and footnote references.

We disagree. This case is not a typical anticipatory search warrant case, since, as reflected in the foregoing quotations, the triggering condition is usually the arrival of some illegal material, such as a package containing child pornography or narcotics. However, Appellant's argument proceeds from a flawed premise, as the triggering condition was not the **receipt** of the drugs, but rather Appellant's signal that he would **deliver** drugs to the CI.

*Wallace*, *supra*, establishes that anticipatory warrants are not limited to the arrival of an item. Therein, our Supreme Court reviewed an anticipatory search warrant regarding the sale of drugs from a particular residence. The application for the search warrant relied upon information from a CI that a black male known as Greg used a gold-colored Mercedes to deliver narcotics. The application represented that the informant stated he could purchase cocaine from Greg at a particular residence between the hours of 7:00 p.m. and 10:00 p.m. The CI also provided Greg's cell phone number.

Based on this information, an officer sought an anticipatory search warrant for that residence. The affidavit set forth that further investigation revealed that Gregory Wallace lived at the particular home, and a criminal background check revealed that Wallace had listed in his papers the same phone number supplied by the CI. The affidavit further stated that the CI had reliably provided information in the past. The search warrant was to be

executed upon the triggering condition of the sale of drugs at the residence. The warrant was issued, and, on that same day, the CI entered the residence and returned several minutes later with two bags of cocaine. Authorities then executed the search warrant.

Our Supreme Court determined that the anticipatory warrant application amounted to little more than an assertion that the informant could arrange a drug sale, which is insufficient. In other words, the fact that drugs were actually sold to the CI from Wallace's residence said nothing about whether the magistrate could lawfully conclude *ex ante* that probable cause existed that the sale would occur. In this vein, **Wallace** emphasized that the search warrant application gave no indication that the drugs would be inside Wallace's residence. The CI's information revealed only that "Greg" sold cocaine from his car, not his home, and the warrant did not provide any details of "Greg's" prior sales. Moreover, the fact that the phone number and address were linked to Wallace was of little value, as that information was publicly available. Additionally, the police failed to confirm through their own investigation that Wallace used his residence for selling drugs. Of note to the issue at bar, the Court stated:

> There was no factual basis in the affidavit which established that the confidential informant had any past relationship with "Greg," ever witnessed "Greg" in possession of drugs, or, critically, had been inside of Appellant's home recently and observed drugs stored there. Furthermore, there were no facts in the affidavit which suggested that the confidential informant had, at any time, personally purchased drugs from "Greg," or witnessed

- 35 -

> "Greg" selling drugs at **any** location, let alone at Appellant's home. In short, the affidavit contained only the informant's bare assertion that he could effectuate a controlled purchase at Appellant's home at a particular time.

*Id*. at 1050 (emphasis in original). Notably, *Wallace* did not suggest that the Commonwealth would have to establish that Wallace's home would **receive** the drugs which were then sold. The case implicitly endorsed the notion that the sale of drugs from a home could serve as a triggering condition if sufficiently supported.

In contrast to *Wallace*, the affidavit for the anticipatory search warrant in this case supplied a wealth of information regarding the recent presence of narcotics in Appellant's residence, as well as Appellant's prior deliveries to the CI. The application sets forth the details of four prior occasions where Appellant supplied drugs to the CI, two of which occurred at Appellant's residence. Each time, Appellant would supply more drugs when the CI paid for the prior deliveries. The last three deliveries all occurred within weeks of each other. Thus, the application established a pattern whereby Appellant would provide a fresh delivery of drugs upon payment for the previous deliveries.

Most significantly, the June 27, 2011 incident concluded with Appellant telling the CI that additional drugs would be available on June 29, a statement that was made after the CI provided payment for the last delivery. We find that a reviewing magistrate could determine that "(1)

there is probable cause to believe the triggering condition will occur; and (2) if the triggering condition occurs there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id***. at 1049. While the triggering condition largely overlaps with the second requirement, as Appellant's contact to the CI provided the basis to believe Appellant's residence contained the contraband, this is not a case, as in ***Wallace***, where the affidavit did little more than indicate that a drug sale could be arranged. The search warrant application provided sufficiently specific information to conclude there was probable cause to believe that Appellant would call the CI on June 29, 2011, to supply more drugs. Therefore, we deny relief on this ground.

Judgment of sentence affirmed.

Judge Olson, Judge Ott, Judge Stabile and Judge Dubow join this opinion.

President Judge Gantman concurs in the result of this opinion.

Judge Lazarus files a dissenting opinion in which Judge Shogan joins.

President Judge Emeritus Bender did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/14/2018