J-S04038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                   :  PENNSYLVANIA
                                   :

          v.                        :

AARON WILLIAMS                  :

          Appellant         :  No. 892 EDA 2020

Appeal from the Judgment of Sentence Entered April 26, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012350-2015

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED FEBRUARY 11, 2022**

Aaron Williams appeals from the April 26, 2019 aggregate judgment of

sentence of 3½ to 7 years' imprisonment, followed by 3 years' probation,

imposed after he was found guilty of possession with intent to deliver a

controlled substance ("PWID") and seven counts of possessing instruments of

crime ("PIC").[1]  After careful review, we affirm the judgement of sentence.

The trial court summarized the relevant facts of this case as follows:

> On November 20, 2015, at about 7:00 a.m.,
> Pennsylvania State Parole Officer Timothy Stevenson
> and several other law enforcement personnel went to
> a residence locate at 1336 North Allison Street to
> serve an arrest warrant and a DNA search warrant on
> Trevon Bostic[k], [A]ppellant's brother.  While there,
> the agent and other members of his team did not

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and 18 Pa.C.S.A. § 907(a), respectively.

encounter Bostick but did interact with [A]ppellant, who was inside the residence at the time.

Philadelphia Police Detective Carl Watkins was a member of the team that went to 1336 North Allison Street. He and the other law enforcement officers entered the residence and saw [A]ppellant, who had come from the residence's second floor. After the team secured the first floor, Detective Watkins, along with Detective Tom Price went to the residence's second floor where [A]ppellant said he had come from when police saw him.

Once on the second floor Detective Watkins went to the rear bedroom and began checking for persons therein which included turning over a mattress to see if anyone was hiding under the bed. When he overturned the mattress he observed a pistol and an extended magazine that was in plain view. He informed Detective Price about seeing the gun and when Detective Price came around to the side of the bed where the gun was situated, both detectives observed a casserole plate that had a white substance on it that tested positive for the presence of cocaine. Both detectives bagged up the crack cocaine and left it and the gun in the locations where they observed them. They then informed the parole supervising agent about what they had seen and he contacted the Philadelphia Police Department's Narcotics Unit.

Philadelphia Police Officer Joseph McCook of the Narcotics Field Unit, upon being informed about what the two above mentioned detectives observed, obtained a search warrant for the residence. He and other officers executed the warrant about 11:30 a.m., on November 20, 2015. The search resulted in the seizure of the gun, which was loaded, the extended clip, which had twenty-six bullets in it, and the alleged crack cocaine observed by the detectives in the second floor back bedroom.

Police also recovered from that room and a middle bedroom[:] 1.) another loaded magazine clip; 2.) a loaded Colt AR 15 that had twenty-four bullets in an

- 2 -

attached magazine; 3.) a Ruger handgun loaded with six bullets; 4.) a Mossberg .12 gauge shotgun; 168 bags filled with what testing revealed to be just over seven grams of heroin from a shelf on top of a bureau; 6.) two identifications cards containing the name [Aaron] Williams; two scales; 7.) mail addressed to [A]ppellant; and 8.) items used in a drug operation such as spoons, razors, a knife, a dust mask, a grinder, a cooking pot, Pyrex glassware, and three plates, some of which contained drug residue on them. Small unused and new Ziploc bags, an ink stamp, and gloves were seized from a middle bedroom. Finally, police recovered three handguns and ammunition from the first floor of the residence. The amount of the drugs recovered had a street value of $208,879 dollars and an expert testified that the drugs were possessed for distribution and sale based on the totality of circumstances.

Trial court opinion, 10/22/20 at 2-3 (citations to notes of testimony and footnotes omitted).

On April 14, 2016, Appellant filed an omnibus pretrial motion to suppress all the physical evidence seized by police in connection with the execution of the search warrant at the North Allison Street residence. Following a hearing, the suppression court denied Appellant's motion on November 3, 2016. Appellant waived his right to a jury and proceeded to bench trial on November 20, 2018. Following a one-day bench trial, the trial court found Appellant guilty of PWID and seven counts of PIC. As noted, Appellant was sentenced to an aggregate term of 3½ to 7 years' imprisonment, followed by 3 years' probation, on April 26, 2019.

Appellant did not file post-sentence motions or a direct appeal. Following the reinstatement of his direct appeal rights **nunc pro tunc**,

- 3 -

Appellant filed a timely notice of appeal on March 9, 2020. On July 13, 2020, the trial court directed Appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant filed his timely Rule 1925(b) statement on August 4, 2020, and the trial court filed its Rule 1925(a) opinion on October 22, 2020.

Appellant raises the following issue for our review:

> [1.] Whether the [trial] court erred in finding the Appellant guilty beyond a reasonable doubt where it was established that multiple individuals had access to the domicile and there is no evidence that the Appellant ever handled any of the narcotics or weapons[?]

Appellant's brief at 6.[2]

Our standard of review in evaluating a challenge to the sufficiency of the evidence is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

---

[2] Appellant has indicated that he is withdrawing the claim raised in his Rule 1925(b) statement that the suppression court erred in denying his suppression motion. *See* Appellant's brief at 5.

- 4 -

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

Preliminarily, we note that to the extent Appellant argues that there was insufficient evidence to sustain his conviction for PIC, we find this claim is waived. Rule 1925(b) provides, *inter alia*, that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P.1925(b)(4)(vii). It is well settled that,

> [i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient.

*Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.Super. 2013) (citations and internal quotation marks omitted).

Here, our review establishes that Appellant's Rule 1925(b) statement fails to identify the specific elements of PIC that the Commonwealth failed to prove. *See* Rule 1925(b) statement, 8/4/20, at unnumbered page 1. On the contrary, Appellant's Rule 1925(b) statement makes no mention of the crime of PIC whatsoever, nor does it reference any of the weapons found at the residence. *Id.* Accordingly, Appellant has waived any challenge to the sufficiency of the evidence with respect to PIC.

We now turn to Appellant's claim that there was insufficient evidence to sustain his conviction for PWID. To sustain a conviction for the crime of PWID,

the Commonwealth must prove that Appellant knowingly created, delivered, or possessed a controlled or counterfeit substance with the intent to manufacture, distribute, or deliver it.  35 P.S. § 780–113(a)(30).

Here, the crux of Appellant's claim is that the Commonwealth failed to prove that he was the individual in possession or control of the narcotics found in the residence and that "[t]he evidence at trial establishes that [he] was merely present in [the] house when a warrant was executed."  (Appellant's brief at 8-9.)  We disagree.

In situations where it cannot be proven that a suspect had the narcotics on his person, the Commonwealth is required to prove constructive possession.  *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement.  Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not.  We have defined constructive possession as conscious dominion.  We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012) (citations and internal quotation marks omitted), *appeal denied*, 63 A.3d 1243 (Pa. 2013).  As with any other element of a crime, the Commonwealth may sustain its burden of proving constructive possession by means of wholly circumstantial evidence.  *Hopkins*, 67 A.3d at 820.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence to establish that Appellant constructively possessed the narcotics in question. The record establishes that on the morning of November 20, 2015, police executed a search warrant at the North Allison Street residence and found the following items in the middle and rear bedrooms on the second floor: a casserole dish containing approximately 2,071.99 grams of cocaine; a bag containing 168 stamped packets of heroin with a total weight of 7.09 grams; and two digital scales. Notes of testimony, 11/20/18 at 15-16, 24-28, 54. Police Officer Kevin Keys, an expert in narcotic sales assigned to the Narcotics Field Unit, testified that the amount of the narcotics recovered had a street value of $208,879.00, and that in his opinion they were possessed with the intent to distribute, based upon the totality of circumstances. *Id.* at 53-55.

The record further establishes that police recovered numerous items from these two bedrooms that are commonly utilized in drug distribution, including spoons; razors; a knife and grinder; glassware and plates, some of which contained drug residue; small Ziploc bags; as ink stamp; and gloves. *Id.* at. 26-32, 55. During a search of the rear second-floor bedroom, police

also recovered four pieces of mail addressed to Appellant and two of his identification cards. *Id.* at 27-28, 30.[3]

The Commonwealth presented evidence at trial to establish that Appellant was alone in the residence at the time the police arrived and was observed by Detective Karl Watkins and other members of the law enforcement team coming from the second floor there the bulk of the drugs and drug-related paraphernalia was found. *Id.* at 14-15, 19-20. The testimony of Appellant's mother, Gail Randolph-Williams, further confirmed that Appellant resided in the house, and Appellant himself acknowledged to police that he had come from the upstairs bedroom "at the top of the step[s]" when they arrived. *Id.* at 14, 18-19, 71.

Appellant contends, without any support in the record, that the narcotics found by police belonged to the other individuals who resided at the home – namely, his brother. Appellant's brief at 9. We find that this claim is equally without merit. Courts in this Commonwealth have long recognized that two persons may constructively possess narcotics at the same time. *Commonwealth v. Katona*, 191 A.3d 8, 12 (Pa.Super. 2018), *affirmed*, 240 A.3d 463 (Pa. 2020); *see also Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) ("constructive possession may be found in one or more

---

[3] The record reflects that the police also recovered multiple firearms and ammunition from the residence that are not relevant to Appellant's claim on appeal. *See* notes of testimony, 11/20/18 at 24-25, 32-33.

actors where the item [at] issue is in an area of joint control and equal access." (citation and internal quotation marks omitted)).

Based on the foregoing, we find that the Commonwealth presented sufficient evidence for the trial court, sitting as factfinder, to conclude that Appellant possessed "the power to control the [narcotics] and the intent to exercise that control." **Brown**, 48 A.3d at 430. Accordingly, Appellant's sufficiency claim must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2022