J-S49035-19

2021 PA Super 103

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR ROJAS-ROLON, | : | |
| | : | |
| Appellant | : | No. 3267 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 20, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0008005-2017

BEFORE: BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED MAY 18, 2021**

Appellant Victor Rojas-Rolon appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County following his conviction by a jury on the charges of delivery or possession with the intent to deliver a controlled substance (PWID), possession of a controlled substance, and possession of drug paraphernalia.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On October 27, 2017, Appellant was arrested and charged with various drug-related offenses. Appellant filed a counseled motion to compel disclosure of a confidential informant, as well as a counseled motion to suppress the physical

_____

[*] Former Justice specially assigned to the Superior Court

[1] 35 P.S. §§ 780-113(a)(30), (16), and (32), respectively.

evidence seized by the police. After a hearing, the trial court denied both motions, and on June 18, 2018, Appellant proceeded to a jury trial, at which the Commonwealth presented the testimony of Police Officer Michael Breslin, Corporal Brian Weitzel, Sergeant Edward Kropp, and Police Officer Andrew Licwinko.[2] The trial court has accurately summarized the testimony presented at trial as follows.

> [O]n June 28, 2017, Officer Michael Breslin and Andrew Licwinko, of the Pottstown Borough Police Department, met with a confidential informant to [set up a controlled] purchase [of] heroin from the Appellant. [N.T., 6/18/18, at 29]. The confidential informant made a phone call to the phone number [610-***-****], and a male answered the call. [*Id.* at 29-30]. The officers [were able to] clearly [hear] the entire conversation between the confidential informant and the male on the other end of the line, who arranged to meet immediately at the Rite Aid in Pottstown[.] The purpose of the meeting was for the informant to purchase two bags of heroin for $20.00. [*Id.* at 31].
>
> After the phone call, the officers checked the phone number in their LexisNexis database and found that the number belonged to Jenny Rojas, an individual with the same last name as the Appellant, and that the phone number was registered to the Appellant's address. [*Id.* at 30]. As per police policy when a controlled buy is to occur, Officer Breslin searched the confidential informant to be sure he/she was free and clear of any drugs, paraphernalia, and currency, which [in this case] he/she was. [*Id.* at 31-32]. Officers Breslin and Licwinko then gave the informant $20.00 of prerecorded currency, and they drove him/her to the area of the Rite Aid. [*Id.* at 32].
>
> Corporal Brian Weitzel and Sergeant Edward Kropp, of the Pottstown Borough Police Department, were also stationed in the area of the Rite Aid in separate undercover vehicles so that the confidential informant could be viewed during the entire time that the controlled buy occurred. [*Id.* at 32, 34-35]. When Officer Breslin arrived in the area just south of the Rite Aid in the area of

---

[2] Appellant neither testified nor presented any witnesses at his jury trial.

South Evansburg Square, the confidential informant exited the vehicle and walked north on Evans Street to the side parking lot of the Rite Aid. [*Id.* at 35-36]. Officer Breslin observed the confidential informant exit the vehicle and walk toward the Rite Aid, and then Corporal Weitzel picked up surveillance of the informant before Officer Breslin lost sight of him/her. [*Id.* at 35-36, 69-70]. Officer Breslin then continued traveling north on Evans Street, then went west on High Street, at which time he saw the confidential informant walk toward and get into the Appellant's red Chevy Cobalt in the Rite Aid parking lot. [*Id.* at 36, 39]. Appellant owned the Chevy Cobalt and was driving the vehicle. [*Id.* at 38-39]. There was a female passenger, who was unknown to the officers, in the passenger seat. [*Id.* at 38-39, 53]. Corporal Weitzel also saw the confidential informant enter the Appellant's vehicle, specifically at the rear driver's seat. [*Id.* at 70-71]. Corporal Weitzel observed the confidential informant speaking with the Appellant inside the vehicle. [*Id.* at 73, 75-76]. Approximately one minute later, the Appellant drove to the other side of the Rite Aid parking lot, whereupon the confidential informant exited the vehicle, and continued speaking with the Appellant when he/she stepped out of the vehicle. [*Id.* at 37, 72-73]. The confidential informant was not observed at any time speaking with the female passenger in the vehicle. [*Id.* at 75-76].

Officer Breslin then received a call on his police radio from one of the other officers on surveillance that the transaction between the Appellant and the confidential informant was complete, and Officer Breslin picked up surveillance of the informant as he/she walked to the predetermined pick-up location on South Evans Street. [*Id.* at 36-37]. The confidential informant entered Officer Breslin's vehicle, which was an undercover police car, and turned over two yellow baggies of suspected heroin to the officers. [*Id.* at 38]. The informant was searched once again and found to be free and clear of any drugs, paraphernalia, or currency. [*Id.*]. The suspected drugs were properly tagged and stored, and then sent to National Medical Services lab for testing, which confirmed that the drugs were fentanyl and methamphetamine. [*Id.* at 41-42].

The four officers at the scene were in constant radio communication with each other during the entire time of the controlled buy and until the confidential informant was back in Officer Breslin's vehicle. [*Id.* at 36, 74]. Following the transaction, Sergeant Kropp, in plain clothes and in an undercover police

vehicle, observed the Appellant exit the Rite Aid parking lot in his red Chevy Cobalt and confirmed his identity when he followed him out of the parking lot and pulled up next to him at a traffic light. [*Id.* at 79-80]. The time that elapsed from when the phone call was made to the Appellant to the time that the confidential informant was picked up by Officer Breslin was seven (7) minutes. [*Id.* at 37]. A period of approximately four months elapsed between the time of the drug transaction and the Appellant's arrest in order to protect the identity of the confidential informant. [*Id.* at 57-58].

Trial Court Opinion, filed 1/11/19, at 2-5.

At the conclusion of the testimony, the jury convicted Appellant of the offenses indicated *supra*, and on September 20, 2018, the trial court imposed an aggregate sentence of two years to four years in prison, to be followed by two years of probation. The trial court also ordered Appellant to pay court costs within the first twelve months of release from custody. N.T., 9/20/18, at 28.

Appellant filed a timely, counseled post-sentence motion, which the trial court denied, and this timely, counseled appeal followed. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant sets forth the following issues (verbatim):

1. Was evidence that [Appellant] was merely present in a car with a Confidential Informant and another unidentified person during an alleged drug transaction sufficient to convict him of Possession with Intent to Deliver, possession of a controlled substance, and possession of paraphernalia where there was no evidence of actual possession and no testifying witness saw the transaction?

- 4 -

2. Did the sentencing court err in imposing costs at sentencing on an indigent defendant without making a determination regarding his ability to pay?

Appellant's Brief at vi.

In his first issue, Appellant contends the evidence was insufficient to sustain his convictions. Specifically, Appellant avers the Commonwealth failed to prove the necessary elements of possession (as to all three convictions) or intent (as to PWID). In this regard, Appellant contends the evidence reveals he was merely present in the vehicle where the confidential informant purchased the controlled substances, and "[it] is uncontested…that a second person was in the car with access and opportunity to deal drugs to the [confidential informant]." *Id.* at 6.

Whether the evidence was sufficient to sustain the charge presents a question of law. **Commonwealth v. Toritto**, 67 A.3d 29 (Pa.Super. 2013) (*en banc*). Our standard of review is *de novo*, and our scope of review is plenary. **Commonwealth v. Walls**, 144 A.3d 926 (Pa.Super. 2016). In conducting our inquiry, we examine:

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For

purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa.Super. 2014) (quotation omitted).

Initially, we agree with Appellant that possession is an element of his crimes[3] and mere presence cannot sustain a finding of possession. ***See***

---

[3] 35 P.S. § 780-113(a)(30) provides the following is prohibited:
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). Here, the Commonwealth sought to prove Appellant delivered the narcotics. Delivery is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance[.]" 35 PS. § 780–102. "Thus, for a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." ***Commonwealth v. Murphy***, 577 Pa. 275, 844 A.2d 1228, 1234 (2004) (citation omitted).

> 35 P.S. § 780-113(a)(16) provides the following is prohibited:
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16).

> 35 P.S. § 780-113(a)(32) provides the following is prohibited:
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting,

*(Footnote Continued Next Page)*

*Commonwealth v. Katona*, 191 A.3d 8, 12 (Pa.Super. 2018) (*en banc*) ("It is true that mere presence cannot sustain a finding of possession."). We also agree with Appellant that "mere presence" is insufficient to sustain the intent element for PWID. *See Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228 (2004).

However, assuming, *arguendo*, the Commonwealth failed to prove Appellant's actual possession/delivery of the controlled substance and paraphernalia, we agree with the trial court that the Commonwealth sufficiently proved Appellant's constructive possession and delivery thereof. Thus, the Commonwealth proved Appellant was not "merely present."

To establish the element of possession, this Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa.Super. 2018) (citation omitted).

We have previously determined:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held

---

ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.
35 P.S. § 780-113(a)(32).

that constructive possession may be established by the totality of the circumstances.

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Parrish*, 191 A.3d at 36–37 (internal citations and quotations omitted).

To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the appellant. Our Supreme Court has recognized that "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 611 Pa. 381, 26 A.3d 1078, 1094 (2011) (internal citation omitted).

Here, viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, we agree with the trial court that the evidence sufficiently establishes Appellant's constructive possession of the controlled substance and paraphernalia, which was distributed to the confidential informant. As the trial court indicated:

In this case, there is considerably more evidence against the Appellant than his mere presence in the car, and there was sufficient evidence presented that the Appellant had the power to control the drugs and the intent to distribute them. When Officer Breslin met with the confidential informant, who was known to him and had been previously used for controlled buys by the Pottstown Borough Police Department, he asked the informant to make a drug purchase. The confidential informant called a phone number, which was registered to a female individual with the same last name as the Appellant and the same address as the

- 8 -

Appellant. A male picked up the call and spoke with the confidential informant arranging to meet right away at a nearby Rite Aid parking lot. After the confidential informant was searched and found to be free and clear of any drugs, paraphernalia, and currency, Officer Breslin gave him/her $20.00 of prerecorded currency to effectuate the drug purchase, and took him/her to the predetermined meeting spot in the area of the Rite Aid. The confidential informant entered the Appellant's red Chevy Cobalt with $20.00 and came out with no currency and two bags of narcotics. There is no question that a drug transaction occurred inside the vehicle that Appellant was driving, which vehicle was registered to the Appellant, at his address. The address of the vehicle registration was the same address as the phone number registration. The officers at the scene saw the confidential informant speaking with only the Appellant, both inside and outside of his vehicle.

During the controlled buy, there were four officers conducting visual surveillance of the area where the transaction occurred, and the officers were in radio contact with each other throughout the entire time, which was approximately three minutes. Between the four officers, there was never a time when the Appellant was not in view. The only thing not viewed by the police in this case was the hand to hand transfer of the drugs that occurred inside Appellant's vehicle....Although there was a female in the passenger seat of the car while the drug transaction occurred, her identity was unknown to the Pottstown Police Officers who investigated this case and there was no evidence presented that she was the individual who handed the drugs to the confidential informant or played any part in the drug transaction. [N.T., 6/18/18/ at 53, 64, 80-81]. During the course of the investigation as the information was collected and the evidence was collected and processed, not one piece of evidence or information received or reviewed showed that the female in the vehicle had dealt drugs or provided drugs to the confidential informant. [*Id.* at 64, 73, 80-81, 88]. To the contrary, the information and evidence collected pertaining to this case showed that it was only the Appellant who was involved in the narcotics sale. [*Id.* at 81].

There was abundant circumstantial evidence presented in this case that could reasonably lead a jury to determine that it was the Appellant who transferred the drugs to the confidential informant. There was no evidence presented at trial that the female passenger in the vehicle was involved in any way with the

drug transaction. Based on the totality of the circumstances, the evidence was sufficient to sustain the Appellant's convictions of possession of drugs and drug paraphernalia, and possession with intent to distribute.

Trial Court Opinion, filed 1/11/19, at 8-10.

We agree with the trial court that, when viewed in its totality, the circumstantial evidence reveals Appellant had the power and intent to control the drugs, as well as the necessary intent for PWID. Accordingly, we find no merit to Appellant's first claim.

In his second issue, Appellant contends his sentence is illegal since the sentencing court ordered him to pay court costs without first making a determination regarding his ability to pay. Appellant relies on Pennsylvania Rule of Criminal Procedure 706(c) for the proposition that a sentencing court has an affirmative duty to determine whether the payment of costs places a financial burden on a defendant. Appellants insists the sentencing court should have considered Appellant's ability to pay prior to or during the sentencing hearing when costs were imposed. Appellant requests we vacate his sentence and remand the matter for a determination of his ability to pay the court costs.

Initially, we note Appellant's claim challenges the sentencing court's authority to impose costs as part of its sentencing order; therefore, it implicates the legality of his sentence. *See Commonwealth v. Lehman*, 201 A.3d 1279, 1283 (Pa.Super. 2019), *affirmed*, 243 A.3d 7 (Pa. 2020). "Our standard of review over such questions is *de novo* and our scope of review is

plenary." **Commonwealth v. White**, 193 A.3d 977, 985 (Pa.Super. 2018) (citation omitted)).

Recently, an *en banc* panel of this Court considered the same issue presented by Appellant and held that "while a trial court has the discretion to hold an ability-to-pay hearing at sentencing, Rule 706(C) only requires the court to hold such a hearing when a defendant faces incarceration for failure to pay court costs previously imposed on him." **Commonwealth v. Lopez**, ___ A.3d ___, 2021 PA Super 51, 2021 WL 1096376 at *1 (Pa.Super. filed Mar. 23, 2021) (*en banc*). In **Lopez**, the trial court revoked the defendant's probation. **Id.** At resentencing, the defendant requested that the trial court conduct an ability-to-pay hearing prior to imposing court costs. **Id.** After the trial court denied the defendant's request to hold an ability-to-pay hearing and imposed mandatory court costs, the defendant appealed. **Id.**

On appeal, this Court rejected the defendant's arguments that Rule 706(C) and related statutes, such as 42 Pa.C.S.A. § 9728(b.2), require the trial court to conduct an ability-to-pay hearing before imposing court costs. **Id.** at *4. Further, the **Lopez** Court concluded that:

> the trial court did not err in denying [the defendant's] motion for [an] ability-to-pay hearing. Although the [trial] court had the discretion to consider that motion at sentencing, it was not required to do so by Rule 706 because [the defendant] had not yet been threatened with incarceration as a result of a default. Should that occur, [the defendant] will be entitled to an ability-to pay hearing pursuant to Rule 706 at that time.

**Id.** at *5 (some formatting altered).

Here, the trial court imposed court costs at sentencing without first holding an ability-to-pay hearing. Appellant does not argue that he is facing incarceration for failing to pay previously imposed court costs. Therefore, pursuant to **_Lopez_**, under Rule 706, the trial court could exercise its discretion to hold an ability-to-pay hearing before imposing court costs as part of Appellant's sentence, but it was not required to do so. **_See Lopez_**, 2021 WL 1096376 at *4-5. Accordingly, we find no merit to Appellant's claim.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2021