J-S11033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR RENAIL BROWN | : | |
| | : | |
| Appellant | : | No. 415 WDA 2020 |

Appeal from the PCRA Order Entered March 16, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0003268-2015

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: JULY 8, 2021**

Appellant, Victor Renail Brown, appeals from the order entered March 16, 2020 dismissing his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.[2]

On December 7, 2015, Kathleen Patterson reported to the police that she had opened a locked door in a bedroom in her home in Charleroi, Pennsylvania where Appellant had been staying and saw a scale and other drug paraphernalia in the room.  An officer with the Charleroi Regional Police

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

[2] On April 22, 2021, the panel filed a memorandum decision affirming the PCRA court's March 16, 2020 order on the grounds that Appellant's PCRA petition was untimely.  Appellant moved for reconsideration of that decision, and on May 27, 2021, in a *per curiam* order, we granted panel reconsideration and withdrew the earlier memorandum.

Department searched the room, discovering drug paraphernalia, a white residue on and near the paraphernalia later determined to be cocaine, and two firearms.

Appellant was charged with two counts of persons not to possess firearms, two counts of receiving stolen property, one count of possession of a controlled substance with intent to deliver ("PWID"), and one count of possession of drug paraphernalia.[3]  Appellant filed a pretrial suppression motion, which the trial court denied after a hearing.  Appellant then proceeded to a jury trial in January 2017.

The evidence at trial revealed the following.  On December 7, 2015, Appellant was residing in a bedroom on the second floor of Kathleen Patterson's home in Charleroi, Pennsylvania.  N.T., 1/18/17, at 37-38. Appellant and Tiffany Courtley, Ms. Patterson's daughter, had been dating and both living in the bedroom, but Ms. Courtley was incarcerated in September 2015 and remained in jail through the date of the incident.  *Id.* at 38-39, 41, 125-26.  Even though Ms. Courtley was incarcerated, Appellant continued living in Ms. Patterson's home.  *Id.* at 39-40.  Ms. Courtley had placed a padlock on the door of the bedroom and the room was often kept locked; originally Ms. Patterson and Ms. Courtley each kept one of the two keys to the lock, but Ms. Courtley lost one at some point so Ms. Patterson gave her key to her daughter.  *Id.* at 41-43.  At the time of the incident, Ms. Patterson

---

[3] 18 Pa.C.S. §§ 3925(a), 6105(a)(1); 35 P.S. § 780-113(a)(30), (32).

- 2 -

believed that Appellant had possession of the only key to the padlock. *Id.* at 43.

On the evening of December 7th, Ms. Patterson removed the padlock by unscrewing the screws of the metal plate that kept it in place and entered the bedroom. *Id.* at 45. Appellant was not present at the house at the moment she removed the padlock, but he had been at the house earlier in the day. *Id.* at 40, 43. Ms. Patterson then called the Charleroi Regional Police Department and spoke with Officer Michael Leasure, informing him that she had found drug paraphernalia inside the room and she wanted to evict Appellant. *Id.* at 57-58. Ms. Patterson testified at trial that no one else entered the bedroom from the time she opened the door until the police arrived. *Id.* at 44-45, 47, 54.

Officer Leasure, who was familiar with Appellant and had seen him at Ms. Patterson's home several times in the prior three months, arrived at Ms. Patterson's house and she showed him to the bedroom. *Id.* at 58-59, 95-96. Ms. Patterson informed Officer Leasure that Appellant was residing in the bedroom in question. *Id.* at 60. Upon entering the bedroom, Officer Leasure discovered various items of contraband in plain view. These items included two firearms located on a shelf in the open closet: a loaded Smith & Wesson .45 caliber pistol and a loaded Charter Arms .38 special. *Id.* at 63, 66, 69-70, 75-76, 77-79. Both firearms were later determined to be functional. *Id.* at 135, 137.

Officer Leasure also found various items of drug paraphernalia, including a digital scale with a white residue on top and plastic sandwich bags with their corners removed. *Id.* at 60, 64-69, 81. Some of the bags also had a white residue on them. *Id.* at 65, 67. Officer Leasure explained that he knew from his experience working on a drug task force that drug dealers commonly ripped off the corners of the bags, packed them with drugs, and tied them with a knot—the drug packages formed from the corners of the bags were referred to as "diapers." *Id.* at 64-65.

Officer Leasure discovered several items in the bedroom indicating Appellant's presence. Appellant's driver's license was found next to the digital scale on a dresser in the bedroom. *Id.* at 60, 67-68, 100-01. Officer Leasure also found two envelopes Ms. Courtley sent from the jail, which were addressed to Appellant at the address of Ms. Patterson's home in Charleroi. *Id.* at 70-71, 82-83. The envelopes were postmarked October 6, 2015 and November 23, 2015. *Id.* at 70-71, 84. Officer Leasure uncovered an additional letter in the bedroom that was addressed to Appellant and from an individual residing at a Pennsylvania state correctional institution; this letter was dated "November 30th." *Id.* at 71, 82, 84. In addition, Officer Leasure found a mixture of men's and women's clothing in the room. *Id.* at 64. Officer Leasure did not see any identifying information of any other individual during his plain view search of the bedroom. *Id.* at 102-03.

Officer Leasure collected the evidence from the bedroom, including some of the residue found on the dresser. *Id.* at 72, 80-81; Commonwealth's

- 4 -

Exhibit E.  A Pennsylvania State Police forensic scientist who was qualified as an expert in the field of drug identification tested the residue and confirmed at trial that it contained cocaine.  N.T., 1/18/17, at 154-58.

Evidence was submitted at trial indicating that both of the seized firearms had been recently stolen from individuals in the Charleroi area.  Corey John Hazy, whose home was in Fallowfield Township but with a Charleroi mailing address, discovered in the early morning hours of November 24, 2015 that someone had entered his truck parked at his residence and stolen his Charter Arms .38 special.  *Id.* at 106-10.  He immediately reported the theft to the Pennsylvania State Police.  *Id.* at 108.  The parties stipulated that on November 13, 2015, the Smith & Wesson was reported stolen to the Charleroi Regional Police Department, by James Smith, the owner of the firearm.  *Id.* at 124.  The parties also stipulated that Appellant is a person not permitted to possess a firearm under Pennsylvania law due to prior felony convictions.  *Id.* at 112.

The firearms were sent to a Pennsylvania State Police laboratory for analysis.  An expert in latent fingerprint examination testified that his examination revealed that no identifiable prints were present on either of the two firearms.  *Id.* at 143-49.  The firearms were also swabbed for DNA samples, and these samples were compared to a buccal DNA sample collected from Appellant.  *Id.* at 168-76; N.T., 1/19/17, at 12-13.  Detective Chad Zelinski of the Charleroi Regional Police Department testified that when he asked Appellant to provide a DNA sample in June 2016, Appellant stated

"[j]ust because I touched them doesn't mean they're mine." N.T., 1/19/17, at 13.

Brittni Andalaro, the Pennsylvania State Police forensic scientist who was qualified as an expert in DNA analysis, tested four samples, two from each of the firearms. N.T., 1/18/17, at 179-80. Ms. Andalaro tested the four samples using traditional short tandem repeat, or STR, testing and found that the four DNA samples did not produce interpretable results, meaning that no comparison could be made to Appellant's DNA. *Id.* at 195-96.

However, Ms. Andalaro also conducted independent testing of the two samples from the Smith & Wesson firearm to determine if a match could be made based on Y chromosome DNA, which is only present in men. *Id.* at 198-206. Ms. Andalaro discovered that the major component of the DNA found in the first swabbed sample from the Smith & Wesson firearm matched Appellant's Y chromosome DNA haplotype. *Id.* at 206. Therefore, Ms. Andalaro concluded that Appellant—along with his paternally related male relatives who shared the identical or nearly identical Y chromosome—could not be excluded as a contributor of the DNA of the major DNA contributor in the first Smith & Wesson sample. *Id.* at 211-12. Ms. Andalaro stated that Appellant's Y chromosome DNA haplotype was found in no more than one out of every 8,621 individuals. *Id.* at 211. Ms. Andalaro also tested the second swab from the Smith & Wesson firearm and discovered that Appellant's Y chromosome DNA matched the major contributor from the mixture of DNA in this sample as well to the same degree of statistical certainty. *Id.* at 213.

Therefore, Appellant and his paternally related male relatives could not be excluded as a contributor to the DNA from the second Smith & Wesson sample. *Id.*

On January 19, 2017, the jury returned a guilty verdict on all charges. On April 11, 2017, the trial court imposed an aggregate sentence of eight to twenty years' imprisonment. Appellant filed a direct appeal, and this Court affirmed his judgment of sentence on April 2, 2018. ***Commonwealth v. Brown***, No. 1259 WDA 2017 (Pa. Super. filed April 2, 2018) (unpublished memorandum). We affirmed the trial court's denial of Appellant's suppression motion, found that Appellant had waived his sufficiency of the evidence argument as it was not adequately developed in his appellate brief, and found that Appellant had waived his weight of the evidence argument because it was not preserved at sentencing or in a post-sentence motion. Appellant filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which the Court denied on August 8, 2018.

On August 5, 2019, Appellant filed his first, counseled PCRA petition.[4] A hearing was scheduled for December 20, 2019, but as of that date the

_____

[4] Appellant's judgment of sentence became final on November 6, 2018, upon the expiration of the 90-day period in which he could have sought discretionary review with the United States Supreme Court. ***See*** 42 Pa.C.S. § 9545(b)(3) ("For purposes of [the PCRA], a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."); U.S.Sup.Ct.R. 13. As Appellant's petition was filed within one year of the date his judgment became final, the

parties had agreed that an evidentiary hearing was not required for the PCRA court's resolution of the petition. On March 16, 2020, the PCRA court issued a memorandum and order denying the petition. The PCRA court concluded that Appellant's claims of ineffective assistance of counsel lacked arguable merit as the Commonwealth had produced sufficient evidence to prove that Appellant possessed the contraband at issue and that he was aware that the firearms were stolen. Memorandum and Opinion, 3/16/20, at 5-7. On March 18, 2020, Appellant filed this timely appeal.[5]

Appellant presents the following issues for our review:

1. Did the PCRA court err in denying Appellant's PCRA Petition where Appellant proved that direct-appeal-counsel was ineffective for failing to adequately brief a challenge to the sufficiency of the Commonwealth's evidence regarding Appellant's possession of contraband?

2. Did the PCRA court err in denying Appellant's PCRA Petition where Appellant proved that direct-appeal-counsel was ineffective for failing to challenge the sufficiency of the Commonwealth's evidence regarding Appellant's knowledge that the firearms were stolen?

Appellant's Brief at 6 (PCRA court's answers omitted).

_____

petition was timely. **See** 42 Pa.C.S. § 9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final. . .").

[5] Appellant contemporaneously filed his statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 23, 2020, the PCRA court entered a statement that the memorandum accompanying its order dated March 16, 2020, would serve as its Pa.R.A.P. 1925(a) opinion.

We review the denial of a PCRA petition to decide whether the PCRA court's factual determinations are supported by the record and its legal conclusions are free of error. **Commonwealth v. Small**, 238 A.3d 1267, 1280 (Pa. 2020). When supported by the record, the PCRA court's factual findings and credibility determinations are binding on this Court, but we review the lower court's legal conclusions under a *de novo* standard of review. **Id.** Our scope of review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the Commonwealth, the party who prevailed below in this case. **Id.**

In this case, Appellant raises claims related to the ineffective assistance of his counsel in his direct appeal. In assessing a claim of ineffective assistance under the PCRA, we begin our analysis with the presumption that counsel has rendered effective assistance. **Commonwealth v. VanDivner**, 178 A.3d 108, 114 (Pa. 2018). To overcome that presumption, the convicted defendant must establish each of the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

**Id.**

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. **Commonwealth v. Smith**, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of

the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Wallace*, 244 A.3d 1261, 1274 (Pa. Super. 2021) (citation omitted). "It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Commonwealth v. Hill*, 210 A.3d 1104, 1112 (Pa. Super. 2019). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Wallace*, 244 A.3d at 1274 (citation omitted). As an appellate court, "we may not weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* (citation omitted).

In his first issue, Appellant argues that counsel in his direct appeal was ineffective for not properly raising a sufficiency of the evidence challenge with respect to the possessory element of each of the crimes of which he was convicted. Appellant argues that this sufficiency challenge had arguable merit as the Commonwealth did not show that he had actual or constructive possession of the firearms, drugs, and drug paraphernalia found in Ms. Patterson's home. Specifically, Appellant asserts that the evidence presented at trial showed only that he had at some point in the past lived with Ms.

Courtley in the bedroom but there was no evidence that he had recently been inside the bedroom. Appellant further contends that counsel lacked a reasonable basis for his action because he attempted to raise a sufficiency challenge on direct appeal, which this Court found to be waived. Finally, Appellant avers that prejudice was established as this Court would have reversed his convictions if this argument were properly presented in our prior consideration of this matter.

In cases where the Commonwealth is required to prove possession of contraband, including for the charges as to which Appellant was convicted, the Commonwealth may meet this element by showing that the defendant had either actual or constructive possession of the prohibited item. ***Commonwealth v. Rojas-Rolon***, ___ A.3d ___, 2021 PA Super 103, *3 (filed May 18, 2021) (PWID and possession of paraphernalia may be found by constructive possession); ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (PWID and unlawful possession of firearm may be shown through constructive possession); ***Commonwealth v. Grekis***, 601 A.2d 1275, 1280 (Pa. Super. 1992) (Commonwealth can show the "receiving" element of receiving stolen property offense by constructive possession). Constructive possession is a legal fiction used to prove the element of possession of a prohibited item where the defendant was not in physical possession of the item. ***Commonwealth v. Peters***, 218 A.3d 1206, 1209 (Pa. 2019). "Mere presence or proximity to the contraband is not enough." ***Id.*** Rather, "[t]he evidence must show a nexus between the accused and the

item sufficient to infer that the accused had the power and intent to exercise dominion and control over it." *Id.* In other words, the defendant must have had "the ability to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in physical possession." *Id.* (citations omitted).

Constructive possession "is an inference arising from a set of facts that possession of the contraband was more likely than not" and "may be established by the totality of the circumstances." *Hopkins*, 67 A.3d at 820 (citation omitted). As with any other element of a crime, constructive possession may be proven by circumstantial evidence that allows the trier of fact to reasonably infer that the defendant exercised dominion and control over the contraband at issue. *Commonwealth v. Parrish*, 191 A.3d 31, 36-37 (Pa. Super. 2018). Constructive possession may also be found where two or more actors have "joint control and equal access" to the item at issue. *Commonwealth v. Dix*, 207 A.3d 383, 390 (Pa. Super. 2019) (citation omitted).

Upon review, we agree with the PCRA court that Appellant's ineffective assistance claim based on appellate counsel's failure to raise a sufficiency of the evidence challenge to the Commonwealth's proof of his constructive possession of the contraband lacked arguable merit. Viewing the evidence at trial in the light most favorable to the Commonwealth as the verdict winner below, the Commonwealth established that Appellant had been staying at Ms. Patterson's house for several months, he had been at the house earlier on the

day of the December 7, 2015 search, and that he was the sole resident of the second-floor bedroom with possession of the only key to the padlock on the door. N.T., 1/18/17, at 38-43, 58, 96. The record showed that, after Ms. Patterson opened the locked door, Officer Leasure was the next individual to enter the room and he saw the functional Smith & Wesson and Charter Arms firearms, a white substance later determined to be cocaine, drug packaging, and a digital scale, in plain view. *Id.* at 44-45, 47, 54, 63-70, 75-81, 157-58.

Officer Leasure also described various items of evidence found inside the bedroom that connected Appellant to that location. These items included Appellant's driver's license found next to the digital scale; two envelopes addressed to Appellant from Ms. Courtley and marked October 6 and November 23, 2015; another letter to Appellant dated "November 30th"; and men's clothing found in the bedroom. *Id.* at 60, 64, 67-68, 70-71, 82-84, 100-01. No identifiable information for anyone else was found in the bedroom. *Id.* at 102-03. DNA testing on two swabbed samples from the Smith & Wesson firearm revealed a match to Appellant's Y chromosome haplotype—which is present in no more than one out of 8,621 individuals—leading the DNA expert to conclude that neither Appellant nor his paternally related male relatives could be excluded as a contributor to the DNA found on the Smith & Wesson. *Id.* at 206-13. Finally, Appellant indicated to the detective tasked with collecting his buccal DNA sample that he had handled the firearms,

stating "[j]ust because I touched them doesn't mean they're mine." N.T., 1/19/17, at 13.

The Commonwealth thus satisfactorily proved Appellant's constructive possession of the contraband by showing his nexus with the bedroom in which the items were found, which allowed the jury to infer that he had the power and intent to exercise dominion and control over the contraband. **Peters**, 218 A.3d at 1209. Although no evidence was submitted at trial showing precisely when Appellant last entered the second-floor bedroom in Ms. Patterson's house, the jury could reasonably deduce from the totality of the circumstances that Appellant had exclusive access to the room based on the testimony that he possessed the only key to the padlock and that Ms. Courtley was incarcerated at the time of the search. Furthermore, Appellant's personal effects found in the bedroom near the cocaine and drug paraphernalia as well as DNA matching Appellant's paternal lineage on the Smith & Wesson firearm suggest Appellant's handling of the contraband in the past. **Cf. Commonwealth v. McClellan**, 178 A.3d 874, 879 (Pa. Super. 2018) (sufficient evidence to find constructive possession of gun found in shared basement common area of home when DNA samples from the gun's grip and magazine showed that the gun was substantially more likely to have been touched by the defendant as opposed to the family members with which he lived); **see also Commonwealth v. Gray**, 469 A.2d 169, 171 (Pa. Super. 1983) ("Where contraband is found among the defendant's personal effects, in a place normally accessible only to the defendant, the fact finder may

properly infer that the defendant had both the power and intent to control the contraband."). Therefore, we conclude that any argument that appellate counsel could have raised on direct appeal concerning whether there was sufficient evidence at trial that Appellant possessed the contraband lacked arguable merit. *VanDivner*, 178 A.3d at 114.

In his second issue, Appellant argues that his appellate counsel was ineffective for failing to raise a sufficiency of the evidence argument concerning the receiving stolen property charges. Specifically, Appellant argues that appellate counsel should have raised the issue of whether the Commonwealth presented sufficient evidence to prove the element of the offense that he knew or believed that the firearms were stolen. Appellant contends that this claim had arguable merit because the evidence did not show that he had any knowledge that the firearms were stolen and the thefts were unrelated in time and location. Appellant further argues that appellate counsel lacked a reasonable basis for his waiver of this sufficiency challenge on direct appeal and that he suffered prejudice as a properly argued claim would have merited the reversal of his receiving stolen property convictions.

The elements of the offense of receiving stolen property are: "(1) intentionally acquiring possession, control or title, retaining, disposing, or lending on the security of movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) intent to deprive permanently." *Commonwealth v. Nero*, 58 A.3d 802, 807 (Pa. Super. 2012); *see* 18 Pa.C.S. § 3925. To meet its burden on the second element of the offense—

which is often referred to as the "guilty knowledge" element—the Commonwealth must show that the defendant knew the property in question was stolen or that he believed that it had probably been stolen. *Commonwealth v. Gomez*, 224 A.3d 1095, 1099 (Pa. Super. 2019); *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super. 2015) (*en banc*).

As there is rarely direct proof that a defendant knew for a fact that the property was stolen, our Supreme Court has determined that the fact-finder may infer guilty knowledge where the Commonwealth establishes the recency of the theft. *Robinson*, 128 A.3d at 265-68. "Proof that the goods [in question] were recently stolen [] may provide the jury with sufficient circumstantial evidence to support an inference of guilty knowledge, since the 'circumstances of possession as presented by the Commonwealth' (the recency of the theft) suggest 'an explanation for the possession' (that the accused was the thief[])." *Id.* at 267 (quoting *Commownealth v. Williams*, 362 A.2d 244, 249 (Pa. 1976)). "[O]nce the Commonwealth prove[s] the recency of the thefts, the jury [is] free to infer the defendant's guilt (that he could have been the thief) unless the defendant [can] offer a satisfactory alternative explanation for his possession of the stolen goods." *Id.* at 269-70.

Furthermore, "[e]vidence of the recency of the theft is not the only basis for an inference of guilty knowledge." *Id.* at 268 (internal citation omitted).

Circumstantial evidence of guilty knowledge may [also] include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

***Id.***; *see also **Gomez***, 224 A.3d at 1100. As with all culpable mental states, the guilty knowledge element "may be inferred from circumstantial evidence." ***Robinson***, 128 A.3d at 265.

In this matter, the Commonwealth proved that both firearms were stolen in separate incidents within several weeks of the date they were seized and from locations in close proximity to the location in which they were found. The Smith & Wesson firearm was reported stolen to the Charleroi Regional Police Department on November 13, 2015, 24 days before it was discovered in Ms. Patterson's home in Charleroi. N.T., 1/18/17, at 124. The Charter Arms firearm was stolen from a home with a Charleroi mailing address on November 24, 2015, 13 days prior to the search. ***Id.*** at 106-10. The Commonwealth thus presented evidence not only that the firearms had been stolen recently,[6] but also the additional circumstantial evidence of guilty

_____

[6] We recognize that the theft of the Smith & Wesson 24 days prior to its recovery is near the upper bounds of what is considered a "recent" theft allowing for the inference of guilty knowledge. *Compare **Commonwealth v. Hogan***, 468 A.2d 493, 498 (Pa. Super. 1983) (*en banc*) ("We cannot say that as a matter of law a period of four weeks was so great as to render impermissible the inference of guilty knowledge[.]"), *with **Commonwealth v. Caesar***, 369 A.2d 341, 344 (Pa. Super. 1976) ("guilty knowledge would be

knowledge that they were being kept in a location close to where they had been stolen. **See Robinson**, 128 A.3d at 268; **Commonwealth v. Phillips**, 392 A.2d 708, 709-10 (Pa. Super. 1978) (inference of guilty knowledge permissible where defendant found with repainted motorbike one week after theft in same city where it had been reported stolen).

The Commonwealth therefore presented sufficient circumstantial evidence to support an inference of Appellant's guilty knowledge that the two firearms were stolen. **Robinson**, 128 A.3d at 268. Appellant did not offer any alternate explanation for his possession of the firearms that would have negated his knowledge or belief as to the fact that the firearms were probably stolen, but we note that even if he had done so, the jury would have been entitled to disregard Appellant's explanation and find Appellant guilty of the receiving stolen property charges. **Id.** at 267-68. Accordingly, we agree with the PCRA court that Appellant's second claim of ineffective assistance based on appellate counsel's failure to raise a sufficiency claim concerning Appellant's guilty knowledge lacked arguable merit. **VanDivner**, 178 A.3d at 114.

_____

conjectu[ral] at best" where automobile was stolen four weeks prior and the defendant was in jail at the time of the theft), **and Commonwealth v. Stover**, 436 A.2d 232, 233 (Pa. Super. 1981) (defendant's possession of car 37 days after it was stolen "was not very 'recent'" and thus did not support guilty knowledge inference). However, in light of the fact that the two firearms were stolen in separate incidents within 24 days of their recovery and in close proximity to where they were found, we conclude that there was more than sufficient evidence to allow the jury to infer guilty knowledge.

For the foregoing reasons, we conclude that the PCRA court properly dismissed Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/8/2021