J-S25025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLIFFORD EMARIEVEBE | : | No. 2253 EDA 2022 |

Appeal from the PCRA Order Entered August 5, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at CP-23-CR-0003424-2017

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED SEPTEMBER 12, 2023**

The Commonwealth of Pennsylvania appeals from the order granting the petition filed by Clifford Emarievebe (Mr. Emarievebe), pursuant to the Post Conviction Relief Act (PCRA).[1]  After careful review, we affirm the order and remand for retrial.

In April 2017, police charged Mr. Emarievebe with several crimes related to alleged sexual assaults of his wife's ten-year-old daughter.  The facts are not pertinent to this appeal.[2]

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] This Court stated the facts in Mr. Emarievebe's direct appeal. ***Commonwealth v. Emarievebe***, 222 A.3d 876 (Pa. Super. 2019) (unpublished memorandum at 1-3).

During pretrial proceedings, Mr. Emarievebe was represented by Assistant Public Defender Frank Zarrilli, Esquire (Attorney Zarrilli). The case proceeded to a jury trial in June 2018. At trial, Mr. Emarievebe was represented by retained counsel, Michael Lambert, Esquire (Attorney Lambert or trial counsel). Thereafter, the jury convicted Mr. Emarievebe of two counts of involuntary deviate sexual intercourse with a child,[3] and one count each of indecent assault of a person less than 13 years of age[4] and endangering the welfare of a child.[5]

On November 8, 2018, the trial court sentenced Mr. Emarievebe to an aggregate 8 - 16 years in prison. The court also required him to register under Tier 3 of the Sexual Offenses Reporting and Notification Act (SORNA).[6] Both parties filed motions for reconsideration of sentence, which the trial court denied on December 28, 2018.

Mr. Emarievebe appealed, challenging the trial court's admission at trial of certain evidence in violation of the rule against hearsay. This Court determined the admission of evidence constituted harmless error; we thus affirmed the judgment of sentence. *Emarievebe*, 222 A.3d 876 (unpublished

_____

[3] 18 Pa.C.S.A. § 3124.1.

[4] *Id.* § 3126(a)(7).

[5] *Id.* § 4304(a)(1).

[6] 42 Pa.C.S.A. § 9799.10 *et seq*.

memorandum at 12).  The Pennsylvania Supreme Court denied allowance of

appeal.  ***Commonwealth v. Emarievebe***, 232 A.3d 560 (Pa. 2020).

On December 29, 2020, Mr. Emarievebe timely filed a first PCRA

petition.  Mr. Emarievebe claimed his convictions were the result of trial

counsel's ineffectiveness for failure to:

1) Call character witnesses;[7]

2) Meet with Mr. Emarievebe more than twice prior to trial;

3) Investigate potential biases of prosecution witnesses;

4) Interview potential defense witnesses;

5) Secure a defense expert before trial and file a timely motion for funds; and

6) Object to the admission of purported Pa.R.E. 404(b) prior bad act evidence.

PCRA Petition, 12/29/20, ¶ 6.  The Commonwealth filed an answer on March

5, 2021.

Mr. Emarievebe's counsel then filed an addendum to the PCRA petition,

raising additional claims of trial counsel's ineffectiveness for: 1) Telling the

jury in opening argument that Mr. Emarievebe would testify, when Mr.

Emarievebe never testified; and 2) "Not asking the judge to charge the jury

---

[7] Mr. Emarievebe attached to his PCRA petition affidavits from three individuals who stated (1) they would have been willing to testify at trial about Mr. Emarievebe's good reputation and other matters; and (2) trial counsel never contacted the individuals.  PCRA Petition, 12/29/20, ¶ 8 & Attachment A.

on character witnesses." Addendum to PCRA Petition, 10/7/21, ¶¶ 6, 8. The Commonwealth filed an answer to the addendum on November 12, 2021.

The PCRA court held an evidentiary hearing on March 17, 2022. The PCRA court explained:

> [Mr. Emarievebe] first presented the testimony of Attorney [] Zarrilli. [Attorney] Zarrilli represented [Mr. Emarievebe] after his preliminary hearing up until he was replaced by privately retained counsel, [Attorney Lambert] []. Attorney Zarrilli testified about what his defense of the case was and the many efforts he took to gather evidence and witnesses for Mr. Emarievebe's trial. Attorney Zarrilli, in speaking with his client, intended to present a partial alibi defense and, in support thereof, knew that he had to reach out to [Mr. Emarievebe's] employers for time-cards and potential testimony. It was [] crucial to the defense to show that Mr. Emarievebe was likely working during at least some of the times the victim alleged she was assaulted. (Notes of Testimony, "N.T.," 3/17/22, at 23-24). When [Attorney] Lambert was retained, [Attorney] Zarrilli gave him his entire file, aside from his notes, and relayed his theory of the case to him.
>
> [Attorney] Zarrilli shared his belief that there was a potential partial alibi defense; that the victim's mother, [Mr. Emarievebe's] wife, and [Mr. Emarievebe] had a contentious relationship which included [Mr. Emarievebe's] wife making a scene at Mr. Emarievebe's] place of employment while demanding money, verbal threats to see [Mr. Emarievebe] incarcerated, and reports that [Mr. Emarievebe's] wife had made to local police that he was dealing drugs. The implication sought to be established was that [Mr. Emarievebe's] wife harbored such animosity that influencing her daughter was a distinct possibility. The impact would be to the victim's credibility. On June 22, 2018, [Attorney] Zarrilli even emailed [Attorney] Lambert[,] listing all the items that he thought would be helpful to procure prior to trial in support of the defense.
>
> [Attorney] Lambert testified second at the PCRA hearing. After taking the stand, [Attorney] Lambert barely got beyond stating his name before he began to tell the court he did not recall anything about this case. In fact, [Attorney] Lambert said "I do not recall" over seventy times during his testimony. He explained that he does not remember anything that occurred pre-trial or

- 4 -

during trial. He explained he had a high-volume practice and could not be expected to remember this case. (N.T., 3/17/22, at 99, 100). This court also had a high volume practice and would not expect counsel to remember routine cases. This case was not, however, routine. [Attorney Lambert, as trial counsel,] did not recall whether or not he discussed an alibi defense with [Mr. Emarievebe] (N.T., 3/17/22, at 103); whether or not he received an email from [Attorney] Zarrilli regarding the defense theory (N.T., 3/17/22, at 103); [Attorney Lambert] didn't recall telling the jury that [Mr. Emarievebe] would take the stand, even though he did not (N.T., 3/17/22, at 113); and did not recall looking for an expert witness only after trial began, who was paid for by the court and then was not able to be qualified as an expert in the field sought (N.T., 3/17/22, at 111-13). One thing [Attorney Lambert] did recall was that he visited [Mr. Emarievebe] less than five times in the year prior to trial [when Attorney Lambert] represented [Mr. Emarievebe]. Furthermore, even though [Attorney] Lambert was subpoenaed to attend the PCRA hearing and bring his file with him, he did not bring his file and testified that he could not find it. (N.T., 3/17/22, at 92). [Attorney] Lambert's testimony that he could not recall essentially anything about this case, or that he could not find his file, was not credible.

Mr. Emarievebe was the last to testify at the PCRA hearing. His testimony was credible, emotional, and clearly delivered. He explained that when he retained [Attorney] Lambert, who was paid for by his friends and colleagues (N.T., 3/17/22, at 142), he told [Attorney Lambert] the defense theory that [Attorney] Zarrilli had previously discussed. [Mr. Emarievebe] explained to [Attorney] Lambert that his wife wanted him in jail because, after having thrown him out of the house, [Mr. Emarievebe] refused her requests to return. (N.T., 3/17/22, at 155). She vowed to ruin his life because she had brought him to this country from Africa and now he was not coming back home and was not giving her $1,000 from his $1,300 paycheck, as he had previously been doing. (N.T., 3/17/22, at 152-55). She had previously alleged that [Mr. Emarievebe] had been sleeping with her twenty year old daughter, which he denied. She also reported to Chester Police that [Mr. Emarievebe] was a drug dealer. There was no criminal case in that matter and, according to Mr. Emarievebe, the Chester Police did not believe a man who had only been in this country for six months was a drug dealer. (N.T., 3/17/22, at 159). She went to Mr. Emarievebe's place of employment[,] where she created a scene arguing with him over money. [Mr. Emarievebe] told

[Attorney] Lambert that he reported [the incident] to one of his coworkers, who could testify in support of th[e incident,] and there may even have been camera footage of the altercation. (N.T., 3/17/22, at 154-55). [Mr. Emarievebe] told [Attorney] Lambert how he had a partial alibi defense and that [Attorney] Lambert could reach out to his two employers. He told [Attorney] Lambert how he wanted to take the stand to testify and explain his wife's motivation for manipulating her daughter. According to Mr. Emarievebe, [Attorney] Lambert did none of the things he asked him to do to prepare for the case. He only visited Mr. Emarievebe twice in jail, the second of which was one day before jury selection began. At that time, he would not discuss the trial strategy with [Mr. Emarievebe,] who was left to wonder what his fate was going to be the next day. [Attorney] Lambert never discussed retaining a medical expert to refute the Commonwealth expert in this case.

PCRA Court Opinion, 10/31/22, at 2-4 (some citations modified).

By order entered August 5, 2022, the PCRA court granted Mr. Emarievebe's PCRA petition and ordered a new trial.[8] The Commonwealth filed a motion for reconsideration, claiming "although trial counsel could not recall much of his representation of [Mr. Emarievebe] at the evidentiary

_____

[8] The August 5, 2022, order does not identify which of Mr. Emarievebe's numerous claims of trial counsel's ineffectiveness merited relief. The PCRA court clarified its ruling in its Pa.R.A.P. 1925(a) opinion, which states in part:

This court granted Mr. Emarievebe's PCRA petition based on a finding of ineffective assistance of counsel for 1) [Attorney] Lambert's failure to investigate and pursue an alibi defense and procure alibi witnesses; 2) failing to timely recognize the need for an expert witness and securing that witness; 3) not meeting with [Mr. Emarievebe] more than twice before trial and failing to prepare [Mr. Emarievebe] for testifying or not testifying; 4) not interviewing potential defense witnesses and character witnesses; 5) telling the jury [Mr. Emarievebe] would take the stand when he was unsure[, and] he would [not] in fact take the stand.

PCRA Court Opinion, 10/31/22, at 6-7.

hearing, [Mr. Emarievebe] nonetheless has not demonstrated the prejudice required for a finding of ineffective assistance." Motion for Reconsideration, 8/18/22, at 4. The PCRA court denied the Commonwealth's motion on August 30, 2022. The Commonwealth filed this timely appeal.

On September 2, 2022, the PCRA court ordered the Commonwealth to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b).[9] The Commonwealth timely filed a concise statement, which reads, in its entirety:

> Th[e PCRA c]ourt erred by granting Mr. Emarievebe's PCRA petition and ordering a new trial.[1]
>
> > [1] The PCRA petition raised several claims of ineffective assistance of counsel. The [PCRA] court's order does not specify on what basis relief was granted, and thus the Commonwealth cannot be any more specific in its statement of errors.

1925(b) Statement, 9/22/22, at 1 (footnote in original). The PCRA court issued a Pa.R.A.P. 1925(a) opinion.

The Commonwealth presents six issues for review:

I. Did the PCRA court err by creating, and granting relief on, a claim that [Mr. Emarievebe] did not raise, and was the claim [Mr. Emarievebe] did raise regarding trial counsel's opening argument meritless where trial counsel had good reason to believe when he made the argument that [Mr. Emarievebe] would testify?

II. Did the PCRA court err in granting [Mr. Emarievebe] relief based on trial counsel's failure to investigate additional character witnesses where [Mr. Emarievebe] chose not to

---

[9] The order cautioned: "Any issues not properly included in the Concise Statement … pursuant to the provisions of Pa.R.A.P. 1925(b) shall be waived[.]" Order, 9/2/22, ¶ 4.

present those character witnesses at the evidentiary hearing and their proposed testimony would have been merely cumulative of the character evidence heard by the jury?

III. Did the PCRA court err in granting [Mr. Emarievebe] relief based on trial counsel's failure to investigate an alibi defense where it is not reasonably probable that investigating [Mr. Emarievebe's] work schedule would have exonerated him as the child victim was unable to provide specific dates for the abuse, and [Mr. Emarievebe] admitted to being with the victim during the one incident she could date?

IV. Did the PCRA court err in granting [Mr. Emarievebe] relief based on trial counsel's belated decision to seek funds for an expert witness where [Mr. Emarievebe] offered no evidence that a better expert was available and would have testified favorably for the defense?

V. Did the PCRA court err in granting [Mr. Emarievebe] relief based on trial counsel's failure to meet with [Mr. Emarievebe] more frequently before trial where it is not reasonably probable that an additional meeting would have changed trial counsel's strategy?

VI. Did the PCRA court err in granting [Mr. Emarievebe] relief based on trial counsel's failure to investigate witnesses to testify to the alleged biases of the victim's mother where [Mr. Emarievebe] offered no evidence that the witnesses were available and willing to testify for the defense?

Commonwealth Brief at 4-5.

Before addressing the Commonwealth's issues, we examine the vagueness of its Rule 1925(b) concise statement. *See Commonwealth v. Parrish*, 224 A.3d 682, 699 (Pa. 2020) ("We begin by addressing the threshold question of whether the Rule 1925(b) statement filed by PCRA counsel was so vague that appellate review of any issues related to the PCRA court's dismissal of [a]ppellant's amended petitions was waived.").

Mr. Emarievebe argues that the Commonwealth waived all issues because it failed to raise it claims of error with particularity. *See* Appellee's Brief at 11-16. Mr. Emarievebe cites this Court's decision in *Commonwealth v. Dowling*, 778 A.2d 683 (Pa. Super. 2001), where we stated, "a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." *Id.* at 686-87 (some capitalization modified); *see also* Appellee's Brief at 11. Mr. Emarievebe argues, in the alternative, that even if the Commonwealth did not waive its claims under Rule 1925(b), "this Court should still affirm the PCRA court because the PCRA court did not err in granting [Mr. Emarievebe's] PCRA petition on his ineffective assistance of counsel claim." Appellee's Brief at 16 (bold omitted).

The Commonwealth counters in its reply brief that waiver is inappropriate, despite its vague Rule 1925(b) statement, because the law is settled law that

> under the[] limited circumstances where the appellant is unable to ascertain the trial court's rationale for the ruling under appeal, it is not appropriate to find waiver or to dismiss the appeal based on a vague Rule 1925(b) statement.

*Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 804 (Pa. Super. 2007); *see also* Commonwealth's Reply Brief at 3.

It is axiomatic that "any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020) (citing *Commonwealth v. Lord*, 719

A.2d 306, 309 (Pa. 1998)). Rule 1925(b) mandates that the "Statement shall concisely identify each error that the appellant intends to assert **with sufficient detail** to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added).

However, this Court also has recognized:

If the reasons for the ruling of the [c]ourt are vague, then an appellant is *forced* to file an incomplete Rule 1925(b) statement and there is no violation of Rule 1925(b). Just as the trial judge cannot be made to guess what an appellant is complaining of on appeal, an appellant cannot be made to guess what the trial judge is thinking in his or her ruling.

*Commonwealth v. Zheng*, 908 A.2d 285, 288 (Pa. Super 2006) (italics in original); *Hess*, *supra* (same); *see also* Commonwealth's Reply Brief at 3-4 (citing *Zheng* and related precedent). Upon review, we agree with the Commonwealth that, under the circumstances, waiver is not appropriate. We therefore consider the Commonwealth's claims.

"This Court's standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Carter*, 21 A.3d 680, 682 (Pa. Super. 2011).

Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level. **The PCRA court's credibility determinations, when supported by the record, are binding on this Court**.

*Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014) (*en banc*) (emphasis added; citations, quotation marks, and brackets omitted); ***see***

- 10 -

*also Carter*, 21 A.3d at 682 ("Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." (citation omitted)). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa. Super. 2019) (citation omitted).

The PCRA court, in its 17-page opinion, addressed and agreed with several of Mr. Emarievebe's claims of trial counsel's ineffectiveness. *See* PCRA Court Opinion, 10/31/22, at 9-10 (finding trial counsel ineffective for failing to investigate Mr. Emarievebe's requested alibi defense, which had no reasonable basis and caused Mr. Emarievebe "extreme prejudice"); *id.* at 10-13 (determining, "trial counsel's failure to put any preparation or investigation into retaining a medical expert was a 'complete abdication of the minimum performance required of defense counsel.'" (citation omitted)); *id.* at 13-15 (holding trial counsel was ineffective for failing to consult sufficiently with Mr. Emarievebe prior to trial, and "trial counsel's failure to prepare amounted to an abdication of the minimum performance required of defense counsel and essentially left [Mr. Emarievebe] in a position equivalent to no having counsel at all."), and *id.* at 16-17 ("[Attorney] Lambert's advice to [Mr. Emarievebe] not to testify in this case was ineffective.").

This Court may affirm on any basis. *Commonwealth v. Katona*, 191 A.3d 8, 16 (Pa. Super. 2018) ("we may affirm if there is any basis on the

record to support the trial court's action, even if we rely on a different basis.").

Thus, in the interest of judicial economy, we address the Commonwealth's issue pertaining to trial counsel's failure to investigate Mr. Emarievebe's alibi defense (identified in the Commonwealth's statement of questions as issue III).

The Commonwealth challenges the PCRA court's finding of ineffectiveness based on Attorney Lambert's failure to investigate and present a partial alibi defense as Mr. Emarievebe requested. *See* Commonwealth's Brief at 15, 30-36. According to the Commonwealth, trial counsel was not ineffective because

> there is no evidence that an alibi defense actually existed. Given that the victim alleged ongoing sexual abuse, without specific dates, it is not reasonably probable that investigating [Mr. Emarievebe's] work schedule would have exonerated him. Indeed, during the only incident that the victim could date, [Mr. Emarievebe] admitted that he was with the victim. The PCRA court's order granting relief on this claim should therefore be reversed.

*Id.* at 31. The Commonwealth further states that at the PCRA hearing, "[Mr. Emarievebe], tellingly, did not present any of the alleged alibi evidence that he faulted trial counsel for not presenting. No alibi witnesses testified at the PCRA hearing." *Id.* at 35.

We review claims of counsel's ineffectiveness under the following standard:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. … [T]o prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citations, quotation marks and brackets omitted).

The Pennsylvania Supreme Court has explained:

Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. *Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000) (citing *Strickland* [*v. Washington*], 466 U.S. [668,] 691 [(1984)]). Counsel's unreasonable failure to prepare for trial is "an abdication of the minimum performance required of defense counsel." *Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003) (quoting *Commonwealth v. Perry*, 644 A.2d 705, 709 (Pa. 1994)). The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance.

***Commonwealth v. Johnson***, 966 A.2d 523, 535-36 (Pa. 2009) (citations

modified).

> Ineffectiveness claims can be premised upon a failure to adequately investigate and review the materials provided to the defense. Thus, the onus is on counsel to review all materials to which he has access. ***See Commonwealth v. Stewart***, 84 A.3d 701, 712 (Pa. Super. 2013) (*en banc*) (noting that it can be *per se* unreasonable for defense attorney to conduct no investigation into known witnesses); ***Hill v. Lockhart***, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (discussing prejudice inquiry "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence").

***Commonwealth v. Maldonodo***, 173 A.3d 769, 783 (Pa. Super. 2017) (*en*

*banc*).

Instantly, the PCRA court opined it did not err in finding trial counsel

ineffective, because

> trial counsel's inactions in the instant case amounted to an "abdication of the minimum performance required of defense counsel." [***Brooks***, ***supra***.] **This court found Mr. Emarievebe credible** when he testified that [Attorney] Lambert only met with him twice prior to trial, one of which was the day before jury selection. (N.T., 3/17/22, p. 147). **[Attorney Lambert, as trial c]ounsel[,] never discussed his trial strategy with [Mr. Emarievebe]**, who entered his jury trial without a clue as to what the defense was going to be. (N.T., 3/17/22, p. 155). **[Mr. Emarievebe] credibly explained to the [PCRA] court that he told [Attorney] Lambert about his partial alibi**; that he worked two jobs and could prove he was unable to be around the victim during at least some of the alleged incidents because he was working. (N.T., 3/17/22, p. 146). [Mr. Emarievebe] gave the names of his employers to [Attorney] Lambert and explained that he had to punch in and out of work so there would be time-cards proving when he was at work. (N.T., 3/17/22, p. 152). Mr. Emarievebe's supervisor at work expressed his desire to be at the trial, but [Attorney] Lambert never reached out to him about it. (N.T., 3/17/22, p. 149). There was no attempt at an investigation

in this case to prove an alibi defense. As such, **there is arguable merit to [Mr. Emarievebe's] claim**.

[At the PCRA hearing, **Attorney**] **Lambert offered absolutely no reason for his failure to pursue the alibi defense.** In fact, **[Attorney] Lambert offered no substantive testimony at all other than to allege he had no memory of this case, an argument that this court finds lacking in credibility**. In a case where there was no physical evidence of assault against the victim, the jury had no option but to rely on the testimony of the witnesses. **[Trial c]ounsel's failure to make any effort to pursue [Mr. Emarievebe's] claimed alibi, which would have contradicted at least a portion of the victim's testimony[,] is unsupported by any rational strategy**. The case rose and fell on the credibility of the victim and her mother. Accordingly, pursuing any opportunity to assail that credibility was the only reasonable strategy and essential to changing the outcome. **Mr. Emarievebe suffered extreme prejudice** due to [Attorney] Lambert's failure to investigate his alibi defense.

PCRA Court Opinion, 10/31/22, at 9-10 (emphasis added). The record and law support the PCRA court's reasoning.

As noted, this Court must give "great deference" to a PCRA court's credibility findings. **See Medina**, **supra**; **Carter**, **supra**. Moreover:

Where issues of credibility and weight of the evidence are concerned, **it is not the function of the appellate court to substitute its judgment based on a cold record for that of the [PCRA] court**. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

**Commonwealth v. Sanchez**, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) (citations omitted). Furthermore, we must view the evidence in the light most favorable to Mr. Emarievebe as the prevailing party. **See Medina**, **supra**. Contrary to the Commonwealth's claim, Mr. Emarievebe established all prongs of the ineffective assistance test detailed in **Spotz, supra**. We therefore

- 15 -

conclude the Commonwealth failed to meet its burden of proving the PCRA court erred or abused its discretion in granting Mr. Emarievebe a new trial. **See Stansbury**, **supra**.

Order affirmed.  Case remanded for retrial.  Jurisdiction relinquished.

Judge Nichols and Judge McCaffery concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023